**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email:  lrosen@rosenlegal.com
Email: pkim@rosenlegal.com
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIXTO CASTILLO IV, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiff,<br><br>v.<br><br>6D GLOBAL TECHNOLOGIES, INC., NEW YORK GLOBAL GROUP, INC., NYGG (ASIA), LTD., BENJAMIN TIANBING WEI A/K/A BENJAMIN WEY, TEJUNE KANG, MARK SZYNKOWSKI, ADAM HARTUNG, DAVID S. KAUFMAN, TERRY MCEWEN, ANUBHAV SAXENA, ADAM WARE, BRIAN WARNER, DAVID SLOVINA, GERARD CASAZZA, HILARY SMITH, JASON PORATH, KAT TOPAZ, MIKE TELATOVICH, TANDY HARRIS, RAY ROBINSON, TJ IACIOFANO, BEI LU, NAN LIU, DIANFU LU, ARNOLD STALOFF, SHUYUAN LIU, ZILI ZHAO, SHENG MA, FEGJUN SUN, SEREF DOGAN ERBEK, TIANYI WEI A/K/A SARAH WEI, MICHAELA WEI, AND ROBERT NEWMAN,<br><br>    Defendants. | Case No:<br><br><u>CLASS ACTION</u><br><br>**JURY TRIAL DEMANDED**<br><br><br>**<u>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS</u>** |

Plaintiff Sixto Castillo IV, individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by 6D Global Technologies, Inc. ("6D Global" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants (defined below) and their affiliates, who purchased the publicly traded common stock of 6D Global or its predecessor CleanTech Innovations, Inc. ("CleanTech") from November 3, 2010  to September 10, 2015, both dates inclusive ("Class Period").

2.      During the Class Period, 6D Global failed to disclose that Defendants  were engaged in a stock manipulation scheme, related party transactions, and that 6D Global lacked any internal controls rendering their publically made statements materially false and/or misleading.

## JURISDICTION AND VENUE

3.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. § 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

4.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

5.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District, Defendants are present in this District, and there are related actions involving overlapping defendants pending in this District.

6.     In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

7.     Plaintiff Sixto Castillo IV, as set forth in the attached PSLRA Certification as Exhibit 1, acquired  6D Global securities at artificially inflated prices during the Class Period and was damaged upon  the revelation of the alleged corrective disclosures.

8.     Defendant 6D Global, formally known as the company CleanTech, is a Delaware corporation headquartered in New York, New York. 6D Global securities traded on NASDAQ under the ticker symbol "SIXD."  NASDAQ halted trading of SIXD on September 10, 2015. CleanTech traded on NASDAQ under the ticker symbol "CTEK."

9.     Defendant New York Global Group, Inc. ("NYGG") is  a Delaware corporation headquartered in New York, New York and an additional office is in Beijing, China.

10.     Defendant NYGG (Asia), Ltd. ("NYGG-Asia") is subsidiary of NYGG located in Beijing, China. According to 6D Global's 2015 Proxy Statement filed with the SEC on April 30, 2015 on Form 14A (the "2015 Proxy"), as of April 20, 2015  NYGG-Asia held 44.9% of 6D Global's outstanding shares.

11.     Defendant Benjamin Wei (also known as Benjamin Wey and Tianbing Wei) ("Wei") is the founder and the principle of NYGG. Wei was indicted by the United States Attorney for the Southern District of New York on September 8, 2015, for stock manipulation

and the massing of undisclosed beneficial ownership of more than five percent of the stock of 6D Global, among other companies, and on September 10, 2015 was placed under arrested. Wei resides in New York, New York.

12. Defendant Tejune Kang ("Kang") is the Chairman and Chief Executive Officer ("CEO") of 6D Global. Kang resides in or around New York, New York. According to 6D Global's 2015 Proxy, Defendant Kang owns 29.7% of 6D Global's outstanding shares.

13. Defendant Mark Szynkowski ("Szynkowski") is and has been the Chief Financial Officer ("CFO") of 6D Global since December 2014.

14. Defendant Adam Hartung ("Hartung") is a director of 6D Global.

15. Defendant David S. Kaufman ("Kaufman") is a director of 6D Global.

16. Defendant Terry McEwen ("McEwen") is a director of 6D Global.

17. Defendant Anubhav Saxena ("Saxena") is a director of 6D Global.

18. Defendant Adam Ware ("Ware") is the VP of Business Development, Analytics for 6D Global.

19. Defendant Brian Warner ("Warner") is the director of the Center of Excellence for 6D Global.

20. Defendant David Slovina ("Slovina") is the VP of Recruitment for 6D Global.

21. Defendant Gerard Casazza ("Casazza") is a Senior Analyst for Corporate Development for 6D Global.

22. Defendant Hilary Smith ("Smith") is the Director of Corporate Marketing and Public Relations for 6D Global.

23. Defendant Jason Porath ("Porath") is the VP of Business Development for Mobile/Creative for 6D Global.

24. Defendant Kat Topaz ("Topaz") is the VP of Delivery for Mobile/Creative for 6D Global.

25. Defendant Mike Telatovich ("Telatovich") is the VP of Global Delivery for 6D Global.

26.     Defendant Tandy Harris ("Harris") is the VP of Global Human Resources for 6D Global.

27.     Defendant Ray Robinson ("Robinson") is the Senior VP of Global Sales for 6D Global.

28.     Defendant TJ Iaciofano ("Iaciofano") is the VP of the Center for Excellence for 6D Global.

29.     Defendant Bei Lu a/k/a Bei Lv ("Lu") was the CEO of CleanTech during the Class Period.

30.     Defendant Nan Liu ("Liu") was the CFO of CleanTech during the Class Period.

31.     Defendant Dianfu Lu ("D. Lu") was a director of CleanTech during the Class Period.

32.     Defendant Arnold Staloff ("Staloff") was a director of CleanTech during the Class Period.

33.     Defendant Shuyuan Liu ("S. Liu") was a director of CleanTech during the Class Period.

34.     Defendant Zili Zhao ("Zhao") was a director of CleanTech during the Class Period.

35.     Defendant Sheng Ma ("Ma") was a CFO of CleanTech during the Class Period.

36.     Defendant Fegjun Sun ("Sun") was a CFO of CleanTech during the Class Period.

37.     Defendant Tianyi Wei a/k/a Sarah Wei ("T. Wei") is Defendant Wei's sister. Defendant T. Wei is and has been an employee and manager of NYGG's office in Beijing, China during the Class Period.

38.     Defendant Michaela Wei ("M. Wei") is Defendant Wei's wife. During the Class Period Defendant M. Wei held trading authority over Swiss Brokerage accounts in the names of her family members and others who held warrants or other positions in the shares of 6D Global.

39.     Defendant Seref Dogan Erbek ("Erbek") was an employee of a firm based in Geneva, Switzerland that provided "financial and fiduciary services" for third parties controlled

4

by the Wei family. During the Class Period Defendant Erbek assisted the Wei family to conceal and control and structuring their holdings in 6D Global to evade securities reporting requirement.

40.     Defendant Robert Newman ("Newman") was Defendants Wei and NYGG's attorney during the Class Period.

41.     Collectively, Defendants Wei, Kang, Szynkowski, Hartung, Kaufman, McEwen, Saxena, Iaciofano, Robinson, Harris, Telatovich, Topaz, Porath, Smith, Casazza, Slovina, Warner, Ware  Lu, Liu, D. Lu, Staloff, S. Liu, Zhao, Ma, Sun, T. Wei, M. Wei, Erbek, and Newman are herein referred to as "Individual Defendants."

42.     Collectively, Defendants Kang, Szynkowski, Hartung, Kaufman, McEwen, Saxena, Iaciofano, Robinson, Harris, Telatovich, Topaz, Porath, Smith, Casazza, Slovina, Warner, Ware  Lu, Liu, D. Lu, Staloff, S. Liu, Zhao, Ma, and Sun are referred herein as "Company Defendants."

43.     Collectively, Defendants 6D Global, NYGG, NYGG-Asia, and the Individual Defendants are herein referred to as "Defendants."

## DEFENDANTS' MISCONDUCT

### Background

44.     6D Global is the product of a reverse-merger. In a reverse-merger, a dormant U.S. publicly-traded shell with no operations acquires a privately held company. In exchange, the privately-held company acquires substantially all of the shares of the publicly-traded company. Thus, while in form a reverse-merger is an acquisition of a private company by a public company, in economic substance it is the acquisition of a public company by a private company.

45.     6D Global's predecessor, CleanTech, became a publically-traded company trading on NASDAQ through a reverse merger with shell company Everton Capital Corporation ("Everton"). NYGG facilitated the reverse merger of CleanTech and Everton on July 2, 2010.

46.     On June 16, 2014, CleanTech filed a Form 8-K with the SEC announcing that on June 13, 2014 it had entered into a merger agreement with Initial Koncepts, Inc. d/b/a/ Six Dimensions ("Six Dimensions"). Defendant Kang was the founder, CEO and a shareholder of

Six Dimensions. After the merger, the surviving entity was named 6D Global Technologies, Inc. Accordingly, 6D Global is the successor entity of CleanTech.

47.     Throughout the Class Period, Defendants engaged in a scheme to manipulate the stock price of 6D Global by engaging in undisclosed related party transactions. The Company lacked internal controls allowing Defendant Wei to control 6D Global.

**False and Misleading Class Period Statements**

48.     On November 3, 2010, the Company filed a Form 10-Q for the third quarter of 2010 ending September 30, 2010 (the "3Q10 10-Q"). The 3Q10 10-Q was signed by Defendant Lu.

49.     Attached to the 3Q10 10-Q were Sarbanes-Oxley Act of 2002 ("SOX") certifications signed by Defendants Lu and Liu attesting to the accuracy of the financial statements and that all fraud was disclosed.

50.     On February 22, 2011, the Company filed a Form 10-K for the year ending December 31, 2010 (the "2010 10-K"). The 2010 10-K was signed by Defendants Lu, Liu, D. Lu, Staloff, S. Liu, and Zhao.

51.     Attached to the 2010 10-K were SOX certifications signed by Defendants Lu and Liu attesting to the accuracy of the financial statements and that all fraud was disclosed.

52.     On September 30, 2011, the Company filed a Form 10-K/A for the year ending December 31, 2010 (the "2010 10-K/A"). The 2010 10-K/A was signed by Defendants Lu, Ma, D. Lu, Staloff, S. Liu, and Zhao.

53.     Attached to the 2010 10-K/A were SOX certifications signed by Defendants Lu and Ma attesting to the accuracy of the financial statements and that all fraud was disclosed.

54.     On March 30, 2012, the Company filed a Form 10-K for the year ending December 31, 2011 (the "2011 10-K"). The 2011 10-K was signed by Defendants Lu, Ma, D. Lu, Staloff, S. Liu, and Zhao.

55.     Attached to the 2011 10-K were SOX certifications signed by Defendants Lu and Ma attesting to the accuracy of the financial statements and that all fraud was disclosed.

56.     On January 6, 2014, the Company filed a Form 10-K for the year ending December 31, 2012 (the "2012 10-K"). The 2012 10-K was signed by Defendants Lu, Sun, D. Lu, McEwen, S. Liu, and Zhao.

57.     Attached to the 2012 10-K were SOX certifications signed by Defendants Lu and Sun attesting to the accuracy of the financial statements and that all fraud was disclosed.

58.     On April 15, 2014, the Company filed a Form 10-K for the year ending December 31, 2013 (the "2013 10-K"). The 2013 10-K was signed by Defendants Lu, Sun, D. Liu, McEwen, S. Liu, and Zhao.

59.     Attached to the 2013 10-K were SOX certifications signed by Defendants Lu and Sun attesting to the accuracy of the financial statements and that all fraud was disclosed.

60.     On March 30, 2015, the Company filed a Form 10-K for the year ending December 31, 2014 (the "2014 10-K"). The 2014 10-K was signed by Defendants Kang, Szynkowski, Hartung, Kaufman, McEwen, and Saxena.

61.     Attached to the 2014 10-K were SOX certifications signed by Defendants Kang and Szynkowski attesting to the accuracy of the financial statements and that all fraud was disclosed.

62.     On March 31, 2015, the Company filed a Form 10-K/A for the year ending December 31, 2014 (the "2014 10-K/A"). The 2014 10-K/A was signed by Defendant Kang.

63.     Attached to the 2014 10-K/A were SOX certifications signed by Defendants Kang and Szynkowski attesting to the accuracy of the financial statements and that all fraud was disclosed.

64.     On May 15, 2015, the Company filed a Form 10-Q for the first quarter of 2015 ending March 31, 2015 (the "1Q15 10-Q"). The 1Q15 10-Q was signed by Defendants Kang and Szynkowski.

65.     Attached to the 1Q15 10-Q were SOX certifications signed by Defendants Kang and Szynkowski attesting to the accuracy of the financial statements and that all fraud was disclosed.

66.     On August 14, 2015, the Company filed a Form 10-Q for the second quarter of 2015 ending June 30, 2015 (the "2Q15 10-Q"). The 2Q15 10-Q was signed by Defendants Kang and Szynkowski.

67.     Attached to the 2Q15 10-Q were SOX certifications signed by Defendants Kang and Szynkowski attesting to the accuracy of the financial statements and that all fraud was disclosed.

68.     The statement referenced in ¶¶48-67 above were materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company had deficient internal controls, (2) the lack of internal controls allowed Defendant Wei to exert influence and control over the Company, (3) the Company was engaged in improper and undisclosed material related party transactions, (4) Defendants were engaged in a scheme to manipulate the Company's stock price, and (5) as a result, the Company's public statements were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## DEFENDANTS' MISCONDUCT IS REVEALED
## DAMAGING INVESTORS

69.     Three actions were filed against many of the Defendants bringing to light different aspects of the ongoing scheme of stock price manipulation, fraud, violations of SEC rules and regulations, and undisclosed related party transactions. These actions, detailed below, include an indictment, an SEC action, and a private action brought by a 6D Global institutional investor in a private offering.

### The Indictment Against Defendants Wei and Erbek

70.     On September 8, 2015, the United States Attorney for the Southern District of New York filed an indictment against Defendants Wei and Erbek on charges including stock manipulation and fraud . *United States v. Benjamin Wey, et al.*, 15-crim-611 (the "Indictment").

The Indictment was unsealed on September 10, 2015 and Wei was arrested the same day. The Indictment is attached hereto as Exhibit 2 and incorporated by reference.

71.     The Indictment alleges that before and after CleanTech was listed on NASDAQ, Defendants Wei and Erbek manipulated the share price using a variety of strategies. Indictment ¶18.

72.     During the Class Period, Defendant Wei used nominee entities that were owned or otherwise controlled by Wei, Wei's family member or employees of NYGG-Asia to obtain substantial portions of shares of U.S. shell companies. Indictment ¶8. One of the shell companies that the nominees obtained a substantial percentage of shares was Everton. *Id.*

73.     Even though some of the nominee entities identify certain owners as the sole shareholders, directors and/or signatories, unknown to the investing public, these entities were actually controlled by Defendant Wei. Indictment ¶9. Defendant Wei had and did exercise investment authority over shares of the stock held in the names of the nominees and directed other parties to take action in matters pertaining to nominees including the transfer of shares of stock between nominees. *Id.*

74.     In the scheme to defraud investors, Defendant Wei caused the nominees to retain control of more than 5% of the shares of CleanTech. Indictment ¶13. Because Defendant Wei had investment authority over the nominees, he was required to report his beneficial ownership within 10 days of acquisition of shares in excess of 5% in accordance with Section 13(d) of the Exchange Act. *Id.* Defendant Wei intentionally failed to file the requisite reports under Section 13(d). *Id.*

75.     Defendant Wei caused two retail brokers in Manhattan to solicit customers to buy shares of common stock of CleanTech, often on margin, while simultaneously actively discouraging the sale of these stock prices of CleanTech. Indictment ¶18.

76.     Defendant Wei explicitly instructed Defendant Erbek to maintain the share price of CleanTech stock held in his nominee-controlled accounts. As the Indictment states, on February 7, 2011, Defendant Wei sent an email to Defendant Erbek stating: "Cleantech just

traded at $4.50 per share. Please make sure the trader buys the stock at $5 per share, stay at $5 per share bid price, not less. Please make sure this happens right away." Erbek agreed to do so. Indictment ¶18. The purpose of Defendants Wei and Erbek's emails were to artificially manipulate the market price and demand of CleanTech common stock. Indictment ¶26a-b.

77.     Additionally, according to the Indictment, Defendant Wei orchestrated certain match trades in CleanTech securities for the purpose of manipulating the stock price. Indictment ¶19. As an example stated in the Indictment, in July 2010, soon after CleanTech was listed at an initial offering price of $3.00 per share, Defendant Wei caused the purchase for a U.S. brokerage account in the name of Defendant Wei's siblings of approximately 1,000 shares of CleanTech stock while also causing a Singapore brokerage account in the name of one of the nominee entities he controlled to sell the exact same number of shares. The sale and the purchase were done at $5.10 per share which was 70% above the $3.00 initial offering price. After he executed these transactions, Defendant Wei sent emails to prospective investors touting the apparent 70% increase in CleanTech stock. Indictment ¶19.

78.     Furthermore, the Indictment alleges that from at least December 2010 through at least December 2011, Defendant Wei willfully and knowingly failed to file acquisition of beneficial ownership of CleanTech with the SEC which is violation of SEC rules and regulations. Indictment ¶36.

**The SEC Action**

79.     On September 10, 2015, the SEC filed an action against Defendants Wei, NYGG, T. Wei, M. Wei, Erbek, Newman and additional defendants, for their participation in a scheme to profit from undisclosed controlling ownership interest in several U.S. companies created by reverse mergers, including 6D Global, which were actually controlled by Defendant Wei and NYGG. *United States Securities and Exchange Commission v. Benjamin Wey, et al.,* 15-cv-07116 (PKC) (the "SEC Action"). The SEC Action is attached hereto as Exhibit 3 and incorporated by reference herein.

80. The SEC Action alleges that the reverse merger and creation of CleanTech was part of Defendants' fraudulent scheme and that CleanTech hired NYGG to assist in going public in the United States. SEC Action ¶64.

81. In 2010, NASDAQ delisted CleanTech partly because of Defendants Wei's failure to disclose his involvement in a December 2010 financing in which nominees he controlled, received shares of CleanTech. SEC Action ¶81. The SEC set aside the delisting decision on July 22, 2013 based on NASDAQ's failure to provide evidence that it had specifically requested all documentation about Defendant Wei's financing transactions. SEC Action ¶46.

82. During CleanTech's appeal of the NASDAQ delisting, Defendant Wei submitted a letter to NASDAQ dated June 30, 2011, in which he made false and misleading statements in order to conceal his financial stake in CleanTech's December 2010 offering. The letter stated that "[n]either I nor NY Global has any beneficial ownership of the securities issued in the financing." SEC Action ¶81.

83. The SEC Action, like the Indictment, outlines that Defendants Wei, T. Wei, and M. Wei secretly obtained control over NYGG clients as well as the securities holdings and bank and brokerage accounts of the nominees that they exercises investment authority. SEC Action ¶49. They personally enriched themselves with fees paid to the nominees and proceeds from the sale of shares held in accounts in the names of these Defendants. *Id.*

**6D Global Stock Halted Damaging Investors**

84. As a result of the unsealing of the Indictment and the filing of the SEC Action, on September 10, 2015, NASDAQ halted trading of 6D Global securities, freezing the stock price at $2.90.

85. To date, trading in the Company's stock remains halted, making the Company's stock illiquid and virtually worthless thereby damaging investors.

**Additional Action Filed: The Private Stock Purchase Agreement Action**

86.     On September 28, 2015, Discover Growth Fund ("Discover") filed an action against Defendants 6D Global, Wei and the officers and directors of 6D Global in the Southern District of New York. *Discover Growth Fund v. 6D Global Technologies, Inc., et al.,* 15-cv-07618 (the "Private Action"). The Private Action is attached hereto as Exhibit 4 and incorporated by reference herein.

87.     The Private Action alleges that on August 10, 2015, Discover entered into a Stock Purchase Agreement ("SPA") with 6D Global in which Discover paid $10,000,000 in exchange for 1,088 convertible preferred shares of 6D Global. Private Action ¶23.

88.     6D Global induced Discover to enter into the SPA by making false statements and omitting critical information. Private Action ¶24. 6D Global and the SPA told Discover that there was no "pending or contemplated, any investigation by the Commission involving Company or any of current or former director of officer of the Company," and  that the Company was in material compliance with Sarbanes-Oxley.  Private Action ¶25. However, 6D Global and its officers and directors needed to close the SPA quickly because the of Department of Justice and SEC's investigation of Defendants Wei and NYGG were ongoing and the filings of the Indictment and SEC Actions were looming. Private Action ¶28.

89.     After the execution of the SPA, on August 18, 2015, Discover met with Defendants Kang and Wei. At this meeting, Defendant Kang introduced Defendant Wei as 6D Global's controlling stockholder, saying "basically, I work for him." Private Action ¶32. This statement demonstrated that Defendant Wei was the one controlling the Company and not the CEO as 6D Global's SEC filings and public statements claim.

90.     Discover had never heard of Defendant Wei and at the August 18th meeting, Defendant Wei stated that he controlled NYGG and through NYGG he controlled all of 6D Global stock. Defendant Wei continued to say that Defendant Kang worked for him and that there was "no real public float" and basically all free trading shares of 6D Global were controlled by him and his "friends in China." Private Action ¶32.

## PLAINTIFF' CLASS ACTION ALLEGATIONS

91.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired 6D Global securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

92.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, 6D Global securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by 6D Global or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

93.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

94.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

95.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.      whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of 6D Global;

c.      whether the Individual Defendants caused 6D Global to issue false and misleading financial statements during the Class Period;

d.      whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e.      whether the prices of 6D Global securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

96.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

97.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

c.      6D Global securities are traded in an efficient market;

d.      the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

e.      the Company traded on the NASDAQ and was covered by multiple analysts;

f. the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

g. Plaintiff and members of the Class purchased, acquired and/or sold 6D Global securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

98. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

99. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CAUSE OF ACTION
### Violation of Section 10(b) of The Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

100. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

101. This cause of action is asserted against all Defendants.

102. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell 6D Global's securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

103. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about the business, operations and future prospects of 6D Global as specified herein.

104. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of 6D Global's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about 6D Global and its business operations and financial condition in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers 6D Global securities during the Class Period.

105. Each of the Defendants' primary liability, and controlling person liability, arises from the following: (a) Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (b) by virtue of their responsibilities and activities as senior officers and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's plans, projections and/or reports; (c) Defendants enjoyed significant personal contact and familiarity with the other members of the Company's management team, internal reports and other data and information about the Company's, operations, and (d) Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

106. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing 6D Global's financial condition from the investing

public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' false and misleading statements during the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

107.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for 6D Global's securities was artificially inflated during the Class Period.

108.    In ignorance of the fact that market prices of 6D Global's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired 6D Global's securities during the Class Period at artificially high prices and were damaged thereby.

109.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding 6D Global's financial results and condition, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired 6D Global securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

110.    By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

111.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

112. This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

**SECOND CAUSE OF ACTION**
**Violation of Section 20(a) of The Exchange Act**
**Against the Company Defendants and Defendant Wei**

113. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

114. This second cause of action is asserted against each of the Individual Defendants.

115. The Company Defendants and Defendant Wei acted as controlling persons of 6D Global within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and misleading. The Company Defendants and Defendant Wei were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

116. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

117. As set forth above, 6D Global and the Company Defendants and Defendant Wei each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

118. By virtue of their positions as controlling persons, the Company Defendants and Defendant Wei are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

119. This action was filed within two years of discovery of the fraud and within five years of Plaintiff' purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray for relief and judgment, as follows:

a. Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

b. Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d. Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 13, 2015                        Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/Phillip Kim_____
Laurence M. Rosen, Esq. (LR5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Avenue, 34th Floor
New York, NY, 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenelgal.com