## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH PUDDU, MARK GHITIS, VALERY BURLAK, and ADAM BUTTER,<br><br>  Plaintiffs,<br><br>    v.<br><br>6D GLOBAL TECHNOLOGIES, INC., NYGG (ASIA), LTD., BENJAMIN TIANBING WEI A/K/A BENJAMIN WEY, TEJUNE KANG, MARK SZYNKOWSKI, TERRY MCEWEN, AND NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP,<br><br>  Defendants. | Case No: 15-cv-8061-AJN |

## <u>STIPULATION AND AGREEMENT OF SETTLEMENT</u>

This Stipulation and Agreement of Settlement (together with all Exhibits thereto, the "Stipulation"), dated as of October 7, 2019 which is entered into by and among (i) Lead Plaintiffs Joseph Puddu and Mark Ghitis ("Lead Plaintiffs") and Named Plaintiffs Valery Burlak, and Adam Butter (collectively with Lead Plaintiffs, "Plaintiffs"), on behalf of themselves and the putative class; and 6D Global Technologies, Inc. f/k/a CleanTech Innovations, Inc. ("6D," "6D Global" or the "Company"), Tejune Kang, Mark Szynkowski, and Terry McEwen (the "Individual Defendants" and, together with 6D, the "Settling Defendants"), by and through their undersigned attorneys, states all of the terms of the settlement and resolution of this matter by the Settling Parties (as defined herein) and is intended by the Settling Parties to fully and finally release, resolve, remise, and discharge the Released Claims (as defined herein) against the Released Parties

(as defined herein), subject to the approval of the United States District Court for the Southern District of New York (the "Court").

Throughout this Stipulation, all terms used with initial capitalization, but not immediately defined, shall have the meanings ascribed to them in Section 1 below.

**WHEREAS:**

### A.    The Action

This case was commenced in the United States District Court for the Southern District of New York (the "Court") on October 13, 2015, styled as *Castillo IV v. 6D Global Technologies, Inc., et al.,* No. 15-cv-8061-RWS, alleging violations of federal securities laws by the Settling Defendants.

On January 14, 2016, the Court appointed Messrs. Puddu and Ghitis as Lead Plaintiffs and approved their selection of The Rosen Law Firm, P.A. as Lead Counsel.

Plaintiffs timely filed the Amended Complaint for Violation of the Federal Securities ("Amended Complaint"), alleging: (Count 1) violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") against the Settling Defendants; and (Count 2) violation of Section 20(a) of the Exchange Act against the Individual Defendants.

A month later, with consent of the Defendants, Plaintiffs filed the operative Second Amended Complaint for the Violation of the Federal Securities Laws ("Second Amended Complaint").

Settling Defendants then filed their motion to dismiss with prejudice the Second Amended Complaint that Plaintiffs opposed, which Judge Sweet granted in March 2017, and dismissed the Action.

Plaintiffs timely appealed, and in August 2018, the Second Circuit vacated and remanded in part the District Court's dismissal order.

On April 8, 2019, the action was reassigned to Judge Alison J. Nathan.

**B.      The Settlement**

The Settling Parties attended a mediation session in March 2017 with Jed Melnick of JAMS.  The mediation did not result in a binding settlement.  After the Second Circuit's reversal, the Settlement Parties resumed settlement talks, which were ultimately successful.

This Stipulation memorializes the agreement between the Settling Parties to fully and finally settle the Action and to fully release all Released Claims against Settling Defendants and the Released Parties with prejudice in return for specified consideration and subject to the express approval of the Court.

Out of the $640,000 Settlement Consideration, $240,000 is being paid in consideration for the settlement of the Derivative Actions, and $400,000 is being paid inconsideration for the settlement of the Class Action.

**C.      The Settling Defendants' Denial Of Wrongdoing And Liability**

Throughout the course of the Action and in this Stipulation, the Settling Defendants have denied and continue to deny each, any and all allegations of wrongdoing, fault, liability or damage whatsoever that have or could have been asserted in the Action. The Settling Defendants have also denied and continue to deny, *inter alia*, the allegations and claims that have been or could have been asserted by Plaintiffs, as well as the allegations that Plaintiffs, the Settlement Class, have suffered damages and that Plaintiffs, and the Settlement Class were harmed by the conduct alleged in the Action. The Settling Defendants continue to believe the claims asserted against them in the Action are without merit and that the Action itself should not be certified as a class action for

purposes of trial and adjudication of liability and damages. The Settling Defendants have not conceded or admitted any wrongdoing or liability, are not doing so by entering into this Stipulation, and disclaim any and all wrongdoing and liability whatsoever.

The Settling Defendants have agreed to enter into this Stipulation solely to avoid the uncertainties, burden and expense of further litigation and to put the Released Claims to rest finally and forever. Nothing in this Stipulation shall be construed as or deemed evidence supporting an admission by any of the Settling Defendants or any of the Released Parties with respect to any of Plaintiffs' allegations or claims, or of any wrongdoing, fault, liability or damages whatsoever.

### D.    Claims of Plaintiffs And Benefits of Settlement

Plaintiffs believe that the claims asserted in the Action have merit. Plaintiffs, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Settling Defendants through trial and appeals. In particular, Plaintiffs believe that while they are likely to prove their claims at trial, but because of Defendants' limited resources, they are unlikely to recover anything.

Plaintiffs have also considered the inherent problems of proof and possible defenses to the federal securities law violations asserted in the Action, including the defenses that have been or could be asserted by Settling Defendants during the litigation, motions for summary judgment, motions for class certification, and trial. Plaintiffs have therefore determined that the Settlement set forth in this Stipulation is fair, adequate, reasonable, and in the best interests of the Settlement Class.

Plaintiffs are continuing to prosecute their claims against the remaining Defendants.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among the Plaintiffs (on behalf of themselves and each of the Settlement Class Members), and the Settling

Defendants (by and through their respective undersigned counsel) that, subject to the approval of the Court, in consideration of the benefits flowing to the Settling Parties from the Settlement set forth herein, the Action and the Released Claims as against the Released Parties shall be finally and fully compromised, settled and released, the Action shall be dismissed fully, finally and with prejudice, and the Released Claims shall be finally and fully released as against the Released Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

## 1.    Definitions

In addition to the terms defined above, the following capitalized terms, used in this Stipulation, shall have the meanings specified below:

**1.1.**    "Action" means the putative class action captioned *Castillo Iv v. 6D Global Technologies, Inc., et al.,* No. 15-cv-8061-AJN (S.D.N.Y.).

**1.2.**    "Authorized Claimant" means any Settlement Class Member who is a Claimant and whose claim for recovery has been allowed pursuant to the terms of this Stipulation, the exhibits hereto, and any order of the Court.

**1.3.**    "Award to Plaintiffs" means the requested reimbursement to Plaintiffs for their reasonable costs and expenses (including lost wages) directly related to Plaintiffs' representation of the Settlement Class in the Action.

**1.4.**    "Business Day" means any day except Saturday or Sunday or any other day on which national banks are authorized by law or executive order to close in the State of New York.

**1.5.**    "Claimant" means any Settlement Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

**1.6.**    "Claims" means any and all manner of claims, debts, demands, controversies, obligations, losses, costs, interest, penalties, fees, expenses, rights, duties, judgments, sums of

money, suits, contracts, agreements, promises, damages, actions, causes of action and liabilities, of every nature and description in law or equity (including, but not limited to, any claims for damages, whether compensatory, special, incidental, consequential, punitive, exemplary or otherwise, injunctive relief, declaratory relief, rescission or rescissionary damages, interest, attorneys' fees, expert or consulting fees, costs, or expenses), accrued or unaccrued, known or unknown, arising under federal, state, common, administrative, or foreign law, or any other law, rule, or regulation.

1.7.    "Claims Administrator" means Strategic Claims Services ("SCS"), which shall administer the Settlement.

1.8.    "Defendants" means 6D Global Technologies, Inc. ("6D"), NYGG (Asia) Ltd. ("NYGG (Asia)"), Benjamin Tianbing Wey, Tejune Kang, Mark Szynkowski, Terry McEwen, and NYG Capital LLC d/b/a New York Global Group ("NYGG").

1.9.    "Defense Counsel" means Catafago Fini LLP.

1.10.    "Derivative Actions" mean the shareholder derivative actions styled as *Scott v. Wei, et al.,* Case No. 1:15-cv-09691, pending in the United States District Court for the Southern District of New York and *Scott v. Wei, et al.,* C.A.No. 2018-0665-TMR, pending in the Court of Chancery for Delaware.

1.11.    "Effective Date" shall have the meaning set forth in ¶ 10.3 of this Stipulation.

1.12.    "Escrow Account" means the escrow account established by Plaintiffs for purposes of this Settlement with Huntington National Bank.

1.13.    "Final," when referring to the Final Judgment, means exhaustion of all possible appeals, meaning (i) if no appeal or request for review is filed, the day after the date of expiration of any time for appeal or review of the Final Judgment, and (ii) if an appeal or request for review

is filed, the day after the date the last-taken appeal or request for review is dismissed, or the Final Judgment is upheld on appeal or review in all material respects, and is not subject to further review on appeal or by certiorari or otherwise; provided, however, that no order of the Court or modification or reversal on appeal or any other order relating solely to the amount, payment, or allocation of attorneys' fees and expenses or to the Plan of Allocation shall constitute grounds for cancellation or termination of this Settlement or affect its terms, including the release in ¶ 6.1 hereof, or shall affect or delay the date on which the Final Judgment becomes Final.

**1.14.**   "Final Judgment" means the order and judgment to be entered by the Court finally approving the Settlement and dismissing the Action, materially in the form attached hereto as Exhibit B.

**1.15.**   "Gross Settlement Amount" means $640,000 (Six Hundred Forty Thousand U.S. Dollars). The Settlement Amount consists of a $621,366.87 payment by Berkley and the transfer of $18,633.13 out of the $75,000 balance currently held in escrow by Defense Counsel. The Settlement Amount includes all Settlement Administration Costs, Lead Counsel's attorneys' fees and expenses (as allowed by the Court), Award to Plaintiffs (as allowed by the Court), the settlement of the Derivative Actions, the attorneys' fees and expenses of counsel for the plaintiffs in the Derivative Actions, the settlement proceeds in the Derivative Actions, as well as any other costs, expenses, or fees of any kind whatsoever associated with the Settlement and the settlement of the Derivative Actions.

**1.16.**   "Insurer" means Berkley Insurance Company ("Berkley"), the excess insurer under a directors and officers liability policy issued to 6D.

**1.17.**   "Lead Plaintiffs" means Joseph Puddu and Mark Ghitis as identified in the opening paragraph of the SAC.

**1.18.**   "Lead Counsel" means The Rosen Law Firm, P.A.

**1.19.**   "Named Plaintiffs" means Valery Burlak and Adam Butter.

**1.20.**   "Net Settlement Amount" means the Gross Settlement Amount, less: (i) the Fee and Expense Award (as defined below); (ii) Settlement Administration Costs; (iii) Taxes and Tax Expenses; (iv) any Awards to Plaintiffs; and (v) other fees and expenses authorized by the Court.

**1.21.**   "Notice" means collectively, the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice"), and the Postcard Notice, which are to be made available to Settlement Class Members substantially in the forms attached hereto as Exhibits A-1, A-3, and A-4 on the Claims Administrator's website and/or mailed to Settlement Class Members.

**1.22.**   "Opt-Out" means any one of, and "Opt-Outs" means all of, any Persons who otherwise would be Settlement Class Members and have timely and validly requested exclusion from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the Notice given pursuant thereto.

**1.23.**   "Person" means an individual, corporation, fund, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

**1.24.**   "Plaintiffs" means Joseph Puddu, Mark Ghitis, Valery Burlak and Adam Butter.

**1.25.**   "Plan of Allocation" means a plan or formula for allocating the Net Settlement Amount to Authorized Claimants after payment of Administrative Costs, Taxes and Tax Expenses, and such attorneys' fees, costs, and expenses as may be awarded by the Court.  Any Plan of

Allocation is not a condition to the effectiveness of this Stipulation, and the Released Parties shall have no responsibility or liability with respect thereto.

1.26.   "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Settlement Class substantially in the form attached hereto as Exhibit A.

1.27.   "Proof of Claim" means the Proof of Claim and Release Form to be submitted by Claimants, substantially in the form attached hereto as Exhibit A-2.

1.28.   "Related Parties" means, with respect to each Released Party, their immediate family members, heirs, executors, trustees, administrators, successors, assigns, and present and former employees, officers, directors, attorneys, legal representatives, contractors, accountants, insurers, reinsurers, managers, and agents of each of them, and any person or entity which is or was related to or affiliated with any Released Party or in which any Released Party has a controlling interest, and the present, former and future direct and indirect parents, subsidiaries, divisions, affiliates, predecessors, successors, and the employees, officers, directors, attorneys, assigns, legal representatives, insurers, reinsurers, managers, and agents of each of them.

1.29.   "Released Claims" means, to the fullest extent permitted by law or equity, any and all Claims by any Settlement Class Member against any of the Released Parties that (a) arise out of or are based upon any of the allegations, facts, circumstances, transactions, statements, misstatements, omissions, or subject matters that were alleged in the Action or that could have been alleged in the Action or that could in the future be alleged in any forum based upon the facts alleged in the Action; *and* (b) arise out of or are based upon the purchase, acquisition or sale of 6D common stock during the Settlement Class Period, provided, however, that Released Claims do not include Claims to enforce this Stipulation.

1.30.   "Released Parties" means (i) 6D Global and its past or present subsidiaries, parents, affiliates, successors, predecessors, shareholders, creditors, officers, directors, employees, insurers, reinsurers, professional advisors, attorneys, contractors, agents, and any firm, trust, corporation or other entity in which it has a controlling interest; (ii) Kang, Szynkowski, and McEwen, their legal representatives, heirs, successors in interest or assigns, or any person, firm, trust, corporation or other entity in which a Settling Defendant has a controlling interest; and (iii) Plaintiffs and Settlement Class Members and each of their respective parent entities, associates, affiliates, subsidiaries, predecessors, successors, assigns, attorneys, immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates. For the avoidance of doubt, the following are not Released Parties: (a) NYG Capital LLC d/b/a New York Global Group; (b) NYGG (Asia) Ltd.; (c) Benjamin Wei (also known as Benjamin Wey and Tianbing Wei); (d) Tianyi Wei (also known as Sarah Wei); (e) Michaela Wei; (f) Seref Dogan Erbek; (g) Robert Newman; (h) Capricorn Irrevocable Grantor Trust; (i) Epics Grantor Retained Annuity Trust I; (j) Epics Grantor Retained Annuity Trust II; (k) Grantor Retained Annuity Trust III; (l) Kaskade Grantor Retained Annuity Trust; (m) The Le Cheval Irrevocable Grantor Trust; (n) the parents, present and former spouses, siblings, children, or entity excluded under (a) through (m); (o) the respective heirs, successors, and assigns of the person identified in (a) through (n); and (p) any person or legal entity more than 25% owned or directly or indirectly controlled by, any person, entity, or group of persons and/or entities excluded under (a) through (o).

1.31.   "Releasing Parties" means jointly and severally, individually and collectively, Plaintiffs, each and every Settlement Class Member, each of their respective present, former and future direct and indirect parent entities, associates, affiliates, subsidiaries, predecessors, successors, and the officers, directors, attorneys, assigns, legal representatives, and agents of each

of them, each of their respective officers, directors, attorneys, legal representatives, and agents, and any person or entity which is or was related to or affiliated with any Releasing Party or in which any Releasing Party has a controlling interest, and each of their respective immediate family members, heirs, representatives, administrators, executors, trustees, successors, assigns, devisees, legatees, and estates.

**1.32.**   "Settlement" means the settlement contemplated by this Stipulation.

**1.33.**   "Settlement Administration Costs" means all costs and expenses associated with providing notice of the Settlement to the Settlement Class and otherwise administering or carrying out the terms of the Settlement. Such costs may include, without limitation: the costs of publishing the Summary Notice, the costs of printing and mailing the Notice and Proof of Claim, as directed by the Court, and the costs of allocating and distributing the Net Settlement Amount to the Authorized Claimants. Such costs do not include legal fees.

**1.34.**   "Settlement Class" means all persons that purchased or acquired 6D Global Technologies, Inc. (f/k/a CleanTech Innovations, Inc.) securities between June 16, 2014 and September 10, 2015, both dates inclusive (the "Settlement Class Period") excluding: (i) Defendants; (ii) current and former officers and directors of 6D Global and any other Released Party; (iii) the persons expressly excluded from the definition of Released Parties in paragraph 1.31 (a) through (o); (iv) the respective spouses, children, or parents of any person or entity excluded under subparagraphs, (i) through (iii) of this paragraph; (v) any person or entity more than 5% owned or directly or indirectly controlled by any person or entity excluded under subparagraphs (i) through (iv) of this paragraph or any trust of which such a person is a beneficiary or of which any person or entity is related or affiliated to a beneficiary or a trustee; (vi) the respective heirs, successors, trustees and assigns of any person excluded under paragraphs (i)

through (v); and (vii) those persons who file valid and timely requests for exclusion in accordance with the Court's Order of Preliminary Approval of Settlement ("Preliminary Approval Order"). Plaintiffs may take discovery to determine whether any claimant is an excluded person.

**1.35.** "Settlement Class Member" means any one of, and "Settlement Class Members" means all of, the members of the Settlement Class.

**1.36.** "Settlement Class Period" means the period from June 16, 2014 through September 10, 2015, both dates inclusive.

**1.37.** "Settlement Hearing" means the hearing at or after which the Court will make a final decision pursuant to Rule 23 of the Federal Rules of Civil Procedure as to whether the Settlement set forth in the Stipulation is fair, reasonable and adequate, and therefore, should receive final approval from the Court.

**1.38.** "Settling Defendants" means 6D Global, Tejune Kang, Mark Szynkowski, and Terry McEwen.

**1.39.** "Settling Party" means any one of, and "Settling Parties" means the Settling Defendants and Plaintiffs (on behalf of himself and the Settlement Class).

**1.40.** "Unknown Claims" means and includes any and all claims that one or more Releasing Parties does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties. This includes claims which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Parties, or might have affected his, her or its decision(s) with respect to the Settlement and the Released Claims, including his, her, or its decision to object or not to object to this Settlement. The Settling Parties expressly acknowledge, and the Releasing Parties by operation of the Final Judgment—shall have, and shall be deemed to have expressly waived and relinquished any and all provisions, rights, and benefits conferred by

any law of any state or territory of the United States or any other jurisdiction, or principle of common law that is, or is similar, comparable, or equivalent to California Civil Code ¶ 1542, which provides:

> *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

Plaintiffs or Releasing Parties may hereafter discover facts, legal theories, or authorities in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Final Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Plaintiffs expressly acknowledge, and the Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and a material element of the Settlement.

**2.      The Settlement Consideration**

**2.1.**      Subject to the terms of this Stipulation, Settling Defendants shall cause Insurer, on behalf of the Settling Defendants, within fourteen (14) calendar days after the Court enters the Preliminary Approval Order and such Order is provided to counsel for Berkley, pay or cause to be paid the sum of $621,366.87 into the Escrow Account and shall cause Defense Counsel, on behalf the Settling Defendants, within fourteen (14) calendar days after the Court enters the Preliminary

Approval Order, to pay the sum of $18,633.13 from the escrow held by Defense Counsel into the Escrow Account.

**2.2.**     Under no circumstances will Defendants or their Insurer be required to pay, or cause payment of, more than the amounts set forth in paragraph 2.1 of this Stipulation for any reason whatsoever, including, without limitation, as compensation to any Settlement Class Member, as payment of attorneys' fees and expenses awarded by the Court, in payment of any fees or expenses incurred by any Settlement Class Member, Lead Counsel or as interest on the Settlement Amount of any kind and relating to any time period (including prior to the payment of the Settlement Amount into the Escrow Account), for the settlement of the Derivative Actions or the payment of attorneys' fees and costs in the Derivative Action.  Under no circumstances shall Berkley be obligated to pay more than the remaining limit of liability of the policy issued by Berkley to 6D.

**3.     Handling And Disbursement Of Funds**

**3.1.**     No monies will be disbursed from the Gross Settlement Amount, the IOLTA Account, the Settlement Administration Account or the Escrow Account until after the Effective Date except:

**(a)**     As provided in ¶ 3.4 below;

**(b)**     As provided in ¶ 3.5 below;

**(c)**     As provided in ¶ 8.2 below;

**(d)**     As provided in ¶ 10.10 below, if applicable; and

**(e)**     To pay Taxes and Tax Expenses (as defined in ¶ 4.1 below) on the income earned by the Settlement Administration Account or Escrow Account. Taxes and Tax Expenses shall be paid out of the Gross Settlement Amount and shall be considered to be

a cost of administration of the Settlement and shall be timely paid by the Settlement Administration Account without prior Order of the Court.

**3.2.**     The Escrow Agent shall invest the Escrow Account in short term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Settling Defendants, their counsel, their Insurer and the other Released Parties shall have no responsibility for, interest in, or any liability whatsoever with respect to any investment or management decisions executed by Plaintiffs.

**3.3.**     Plaintiffs shall not disburse the Gross Settlement Amount except as provided in this Stipulation, by an order of the Court, or with the written agreement of Settling Defendants' Counsel.  Plaintiffs shall follow any applicable escrow agreement.

**3.4.**     At any time after the Court grants preliminary approval of the Settlement, Plaintiffs may pay up to $100,000 from the Escrow Account to pay Settlement Administration Costs.

**3.5.**     Within fifteen (15) days after Preliminary Approval, Defendants shall pay the sum of $18,633.13 from the escrow held by Defense Counsel and cause the Insurer to transfer $621,366.87 into the Escrow Account.

**4.     Taxes**

**4.1.**     The Settling Parties agree to treat the Gross Settlement Amount as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. In addition, Lead Counsel or their designee shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 4.1, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1) back to the earliest permitted date. Such elections shall be made in

compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Lead Counsel or their designee to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a)    For purposes of § 1.468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation § 1.468B-2(k)(3) promulgated thereunder, the "administrator" shall be Lead Counsel or their designee. Lead Counsel or their designee shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Amount and Escrow Account (including without limitation the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in this ¶ 4.1) shall be consistent with this ¶ 4.1 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Administration Account and Escrow Account shall be paid out of the Gross Settlement Amount.

(b)    All Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Administration Account and Escrow Account, including any Taxes or tax detriments that may be imposed upon Defendants or their counsel or their Insurer with respect to any income earned by the Settlement Administration Account and Escrow Account for any period during which the Gross Settlement Amount does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and all expenses and costs incurred in connection with the operation and implementation of this ¶ 4.1 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses or penalties

relating to filing (or failing to file) the returns described in this ¶ 4.1) ("Tax Expenses"), shall be paid out of the Gross Settlement Amount, as appropriate. Defendants, their counsel, their Insurer and the other Released Parties shall have no liability or responsibility for the Taxes or the Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid out of the Gross Settlement Amount without prior order from the Court. Plaintiffs shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be withheld under Treasury Regulation § 1.468B-2(1)(2)). Defendants, their counsel, their Insurer and the other Released Parties shall have no responsibility for, interest in, or any liability whatsoever with respect to the foregoing provided in this ¶ 4.1. The Settling Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the provisions of this ¶ 4.1.

## 5. Preliminary Approval Order, Notice Order, And Settlement Hearing

**5.1.** As soon as practicable after execution of this Stipulation, Lead Counsel shall submit this Stipulation and its exhibits to the Court and shall apply for preliminary approval of the Settlement set forth in this Stipulation, entry of a preliminary approval order, and approval for the dissemination of notice. The Preliminary Approval Order to be submitted to the Court shall contain the exhibits substantially in the form set forth in: (i) the Long Notice (Exhibit A-1); (ii) the Proof of Claim and Release (Exhibit A-2); (c) Summary Notice (Exhibit A-3); and (d) the Postcard Notice (Exhibit A-4). The Notice shall include the general terms of the Settlement and the provisions of the Plan of Allocation, and shall set forth the procedure by which recipients of the

Notice may object to the Settlement or the Plan of Allocation or request to be excluded from the Settlement Class. The date and time of the Settlement Hearing shall be added to the Notice and Summary Notice before it is disseminated or otherwise provided to Settlement Class Members. Defendants shall not object to, or have any responsibility for, Lead Counsel's proposed Plan of Allocation.

**5.2.**    At the time of the submission described in ¶ 5.1 hereof, the Settling Parties, through their counsel, shall jointly request that, after the Notice is provided and the Settlement Class Members are notified of the Settlement, the Court hold the Settlement Hearing and (i) approve the Settlement as set forth herein and (ii) enter a final order and judgment substantially in the form of Exhibit B hereto, as promptly after the Settlement Hearing as possible.

**6.**    **Releases And Covenants Not To Sue**

**6.1.**    Upon the Effective Date, the Releasing Parties, on behalf of themselves, their successors and assigns, and any other Person claiming (now or in the future) through or on behalf of them, regardless of whether any such Releasing Party ever seeks or obtains by any means, including without limitation by submitting a Proof of Claim, any disbursement from the Net Settlement Amount, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties and shall have covenanted not to sue the Released Parties with respect to all such Released Claims, and shall be permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any action or other proceeding, in any forum, asserting any Released Claim, in any capacity, against any of the Released Parties.  Nothing contained herein shall, however, bar the

Releasing Parties from bringing any action or claim to enforce the terms of this Stipulation or the Final Judgment.

6.2.    Upon the Effective Date, Settling Defendants, on behalf of themselves and their Related Parties, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, Settlement Class Members, Lead Counsel, and their Related Parties from all Claims, whether known or unknown, which arise out of, concern or relate to the institution, prosecution, settlement or dismissal of the Action (the "Defendants' Released Claims"), and shall be permanently enjoined from prosecuting the Defendants' Released Claims against Plaintiffs, Settlement Class Members, Lead Counsel, and their Related Parties. Nothing contained herein shall, however, bar the Settling Defendants or their Related Parties from bringing any action or claim to enforce the terms of this Stipulation or the Final Judgment. Nothing in this paragraph shall be deemed to alter, amend, release, or waive any indemnification rights that any current or former officer, director, or employee of 6D Global has against 6D Global under the Certificate of Incorporation of 6D Global, or the bylaws of 6D Global, subject to applicable provisions of Delaware statutory or common law governing such indemnification, nor to alter, amend, release, or waive any defenses to such claims for indemnification that 6D Global has. Nothing in this paragraph or the final settlement agreement shall constitute a general release by 6D Global of any other claims that may exist or arise between 6D Global and any current or former officer, director, or employee of 6D Global.

6.3.    This Stipulation incorporates by reference the Bar Order set out in the [Proposed] Order and Partial Final Judgment, which is attached hereto as Exhibit B.

7.    **Administration And Calculation Of Claims, Final Awards And Supervision And Distribution Of The Escrow Account**

7.1.    Under the supervision of Lead Counsel, acting on behalf of the Settlement Class, and subject to such supervision and direction of the Court as may be necessary or as circumstances may require, the Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Amount to Authorized Claimants.

7.2.    The Gross Settlement Amount shall be applied as follows:

        **(a)**    To pay the Taxes and Tax Expenses described in ¶ 4.1 above;

        **(b)**    To pay Settlement Administration Costs;

        **(c)**    To pay Lead Counsel's and Derivative plaintiffs' allowed attorneys' fees and expenses and payments to Plaintiffs for reimbursement of their time and expenses (the "Fee and Expense Award"), to the extent allowed by the Court; and

        **(d)**    To distribute the Net Settlement Amount, less the items set forth in ¶¶ 7.2(a), (b), and (c) hereof, plus all accrued interest, if any, to the Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

7.3.    Upon and after the Effective Date, the Net Settlement Amount shall be distributed to Authorized Claimants in accordance with the terms of the Plan of Allocation set forth in the Long Notice and any orders of the Court.

7.4.    This is not a claims-made settlement, and if all conditions of the Stipulation are satisfied and the Final Judgment becomes Final, no portion of the Settlement Amount will be returned to any of the Settling Defendants or the Insurer. Settling Defendants, their counsel, their Insurer and the other Released Parties shall have no responsibility for, involvement in, interest in, or liability whatsoever with respect to the investment or distribution of the Net Settlement Amount,

the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith. No Person shall have any claims against Lead Counsel, the Claims Administrator or any other agent designated by Lead Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or orders of the Court. Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proofs of Claim filed, where doing so is in the interest of achieving substantial justice.

7.5.    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Amount including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a condition of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation. Any order or proceedings relating to the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to modify, terminate or cancel this Stipulation, or affect or delay the finality of the Final Judgment and the releases contained therein, or any other orders entered pursuant to this Stipulation.

7.6.    6D Global has provided to Lead Counsel the list of the record owners of 6D Global securities during the Settlement Class Period that it has in its possession, and shall reasonably cooperate to subpoena any additional information that Lead Counsel requests as to record owners of 6D Global. ("Settlement Class Information"). The Settling Parties acknowledge that any information provided to Lead Counsel by 6D Global pursuant to this Paragraph shall be treated as

confidential and will be used by Lead Counsel solely to disseminate notice, apprise Settlement Class Members of the Settlement, and/or implement the Settlement.

7.7.    If any funds remain in the Escrow Account by reason of uncashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Amount cash their distribution checks, any balance remaining in the Escrow Account six (6) months after the initial distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants and who receive at least a $10.00 payment; (ii) second, to pay any additional Settlement Administration Costs incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Escrow Account and in making this second distribution, if such second distribution is economically feasible.

## 8.    Lead Counsel's Attorneys' Fees And Reimbursement Of Expenses

8.1.    Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Gross Settlement Amount to Lead Counsel for: (i) an award of attorneys' fees with interest from the Gross Settlement Amount; (ii) reimbursement of actual costs and expenses, including the fees and expenses of any experts or consultants, incurred in connection with prosecuting the Action; and (iii) the Awards to Plaintiffs. Defendants shall take no position with respect to the Fee and Expense Application.

8.2.    Except as otherwise provided in this paragraph, the attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel from the Escrow Account within five (5)

calendar days after the Final Judgment.  In the event that the Effective Date does not occur, or the Final Judgment is reversed or modified in any way that affects the award of attorneys' fees and expenses, or the Stipulation is terminated for any other reason, then Lead Counsel shall be jointly and severally obligated to refund to the Escrow Account, within ten (10) Business Days from receiving notice from Settling Defendants' counsel or from a court of appropriate jurisdiction, either the full amount of the fees and expenses or an amount consistent with any modification of the Final Judgment with respect to the Fee and Expense Award, including accrued interest at the same rate as is earned by the Escrow Account Lead Counsel agrees that the law firm and its partners and/or shareholders are subject to jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph, and they shall be jointly and severally liable for repayment of all attorneys' fees and expenses awarded by the Court. Furthermore, without limitation, Lead Counsel agrees that the Court may, upon application of the Settling Defendants, summarily issue orders, including, without limitation, judgments and attachment orders and may make appropriate findings of or sanctions for contempt against the firms should they fail timely to repay fees and expenses pursuant to this paragraph. Any Awards to Plaintiffs shall not be paid from the Escrow Account until after the Effective Date.

**8.3.**     The procedure for, and allowance or disallowance by the Court of, the Fee and Expense Application are not a condition of the Settlement set forth in this Stipulation and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation. Any order or proceeding relating to the Fee and Expense Application, or any objection to, motion regarding, or appeal from any order or proceeding relating thereto or reversal or modification thereof, shall not

operate to modify, terminate or cancel this Stipulation or the releases contained therein or any other orders entered pursuant to this Stipulation.

8.4.    Any award of attorneys' fees and interest and/or expenses to Lead Counsel or Awards to Plaintiffs shall be paid solely from the Gross Settlement Amount and shall reduce the settlement consideration paid to the Settlement Class accordingly. No Settling Defendant shall have any responsibility for payment of Lead Counsel's attorneys' fees and interest, expenses or other awards to Plaintiffs beyond the obligation of Defendant 6D Global and its Insurer to cause the funding of the Settlement Amount as set forth in ¶ 2.1 above. The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payments to Lead Counsel, Plaintiffs, the Settlement Class and/or any other Person who receives payment from the Gross Settlement Amount or Net Settlement Amount.

9.    **Class Certification**

9.1.    In the Final Judgment, the Settlement Class shall be certified for purposes of this Settlement, but in the event that the Final Judgment does not become Final or the Settlement fails to become effective for any reason, all Settling Parties reserve all their rights on all issues, including class certification. For purposes of this settlement only, in connection with the Final Judgment, Settling Defendants shall consent to (i) the appointment of Plaintiffs as the class representatives, (ii) the appointment of Lead Counsel as class counsel, and (iii) the certification of the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

10.    **Conditions Of Settlement, Effect of Disapproval, Cancellation Or Termination**

10.1.    Plaintiffs, on behalf of the Settlement Class, and the Settling Defendants shall each have the right to terminate the Settlement and Stipulation by providing written notice of his or its election to do so ("Termination Notice") to all other Settling Parties within seven (7) Business Days of any of the following:

      (i)      entry of a Court order declining to enter the Preliminary Approval Order in any material respect;

      (ii)      entry of a Court order refusing to approve this Stipulation in any material respect;

      (iii)      entry of a Court order declining to enter the Final Judgment in any material respect;

      (iv)      entry of a Court order refusing to dismiss the Action with prejudice.

      (v)      entry of an order by which the Final Judgment is modified or reversed in any material respect by any appeal or review;

      (vi)      entry of orders declining to approve the settlements in the Derivative Actions; and

      (vii)      failure on the part of any Settling Party to abide, in material respect, with the terms of this Stipulation.

In the absence of any of the events enumerated above in this ¶ 10.1, no Settling Party shall have the right to terminate the Stipulation for any reason.

    **10.2.**  If the Gross Settlement Amount is not paid into the Escrow Account in accordance with ¶ 2.1 of this Stipulation, then Plaintiffs, on behalf of the Settlement Class, and not Settling Defendants (other than in accordance with ¶ 10.5), shall have the right to (a) terminate the Settlement and Stipulation by providing written notice to the Settling Defendants at any time prior to the Court's entry of the Final Judgment; or (b) enforce the terms of the Settlement and this Stipulation and seek a judgment effecting the terms herein.

**10.3.**   The Effective Date of this Stipulation ("Effective Date") shall not occur unless and until each of the following events occurs, and it shall be the date upon which the last in time of the following events occurs:

        **(a)**   Settling Defendants have not exercised their option to terminate the Settlement pursuant to ¶ 10.5;

        **(b)**   The Court has entered the Preliminary Approval Order attached hereto as Exhibit A or an order containing materially the same terms;

        **(c)**   The Gross Settlement Amount has been paid into the Escrow Account, as set forth in ¶ 2.1 above;

        **(d)**   The Court has approved the Settlement, following notice to the Settlement Class and the Settlement Hearing, and has entered the Final Judgment;

        **(e)**   The Final Judgment has become Final as defined in ¶ 1.13; and

        **(f)**   The Action has been dismissed with prejudice.

**10.4.**   Upon the occurrence of the Effective Date, any and all interest or right of Defendants or the Insurer in or to the Gross Settlement Amount, if any, shall be absolutely and forever extinguished, except as set forth in this Stipulation.

**10.5.**   If prior to Final Judgment, Persons who otherwise would be Settlement Class Members have filed with the Court valid and timely requests for exclusion from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the notice given pursuant thereto ("Opt-Outs"), and such Persons in the aggregate purchased securities during the Settlement Class Period in an amount greater than the amount specified in  separate Supplemental Agreement between the Settling Parties (the "Supplemental Agreement") in 6D during the Settlement Class Period, then Settling Defendants shall have, each in his, her or its sole and

absolute discretion, the option to terminate this Stipulation and Settlement in strict accordance with the requirements and procedures set forth in the Supplemental Agreement (hereinafter the "Supplemental Termination Option").  The Supplemental Agreement shall not be filed with the Court unless and until a dispute among the Settling Parties concerning its interpretation or application arises.

10.6.    Settling Defendants shall not have the right to terminate the Stipulation if the Settlement Amount is not paid pursuant to ¶ 2.1 (other than in accordance with ¶ 10.3). None of the Settling Parties, or any of them, shall have any obligation whatsoever to proceed under any terms other than those provided for and agreed herein. If any Settling Party engages in a material breach of the terms hereof, any other Settling Party, provided that he or it is in substantial compliance with the terms of this Stipulation, may terminate this Stipulation on notice to all the Settling Parties.

10.7.    If the Stipulation shall be terminated, or be canceled, or shall not become effective for any reason, the Settling Parties shall be restored to their respective positions in the Action immediately prior to May 1, 2019, and they shall proceed in all respects as if the Stipulation had not been executed and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Action shall be preserved without prejudice.

10.8.    If the Stipulation is not approved by the Court or the Settlement set forth in this Stipulation is terminated or fails to become Final in accordance with its terms, the terms and provisions of this Stipulation, except as otherwise provided herein, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Action, or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

10.9.    If the Stipulation shall be terminated, or be canceled, or shall not become effective for any reason, within seven (7) Business Days after the occurrence of such event, the Gross Settlement Amount(less taxes already paid and any Settlement Administration Costs which have either been disbursed or are determined to be chargeable) shall be refunded to Berkley plus accrued interest attributable to that amount by check or wire transfer pursuant to written instructions from the Insurer. At the request of 6D Global, or the Insurer, Lead Counsel or their designee shall apply for any tax refund owed on the Gross Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to 6D Global or the Insurer pursuant to written direction from the Insurer.

10.10.    No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the Fee and Expense Application shall constitute grounds for cancellation or termination of the Stipulation.

## 11.    No Admission Of Liability Or Wrongdoing

11.1.    The Settling Parties covenant and agree that neither this Stipulation, nor the fact nor any terms of the Settlement, nor any communication relating thereto, nor the Supplemental Agreement, is evidence, or an admission, presumption or concession by any Settling Party or their counsel, any Settlement Class Member, or any of the Released Parties, of any fault, liability or wrongdoing whatsoever, as to any facts or claims alleged or that have been or could have been asserted in the Action, or in any other actions or proceedings, or as to the validity or merit of any of the claims or defenses alleged or that have been or could have been asserted in any such action or proceeding. This Stipulation is not a finding or evidence of the validity or invalidity of any claims or defenses in the Action, any wrongdoing by any Settling Party, Settlement Class Member, or any of the Released Parties, or any damages or injury to any Settling Party, Settlement Class

Member, or any Released Parties. Neither this Stipulation, nor the Supplemental Agreement, nor any of the terms and provisions of this Stipulation or the Supplemental Agreement, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein or therein, nor the Settlement, nor the fact of the Settlement, nor the Settlement proceedings, nor any statement in connection therewith, (a) shall (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any Released Party, or of any infirmity of any defense, or of any damages to Plaintiffs, or any other Settlement Class Member, or (ii) otherwise be used to create or give rise to any inference or presumption against any of the Released Parties concerning any fact or any purported liability, fault, or wrongdoing of the Released Parties or any injury or damages to any person or entity, or (b) shall otherwise be admissible, referred to or used in any proceeding of any nature, for any purpose whatsoever; provided, however, that the Stipulation and the Final Judgment may be introduced in any proceeding, whether in the Court or otherwise, as may be necessary to enforce the Settlement or Final Judgment, or as otherwise required by law.

**12.     Miscellaneous Provisions**

**12.1.**     6D Global shall produce to Plaintiffs all documents produced in the action styled *Cottam v. Global Emerging Capital Group, LLC, et al.,* Case No. 1:16-cv-04584-RWS-SN (S.D.N.Y.), within five (5) days of the Preliminary Approval Order. Lead Counsel agree that they will not rely on anything contained in such discovery materials as a basis for voiding this settlement agreement or for refusal to submit the proposed settlement to the Court for final approval.

**12.2.**    Except in the event of the filing of a Termination Notice pursuant to ¶¶ 10.1, 10.2, 10.3, 10.5 or 10.6 of this Stipulation or termination notice in accordance with the Supplemental Agreement, the Settling Parties shall take all actions necessary to consummate this agreement; and agree to cooperate with each other to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation.

**12.3.**    The Settling Parties and their respective counsel represent that they will not encourage or otherwise influence (or seek to influence) any Settlement Class Members to request exclusion from, or object to, the Settlement.

**12.4.**    Each of the attorneys executing this Stipulation, any of its exhibits, and any related settlement documents on behalf of any Settling Party hereto hereby warrants and represents that he or she has been duly empowered and authorized to do so by the Settling Party he or she represents, respectively.

**12.5.**    Plaintiffs and Lead Counsel represent and warrant that Plaintiffs are Settlement Class Members and none of Plaintiffs' claims or causes of action against one or more Defendants in the Action, or referred to in this Stipulation, or that could have been alleged against one or more Defendants in the Action have been assigned, encumbered or in any manner transferred in whole or in part.

**12.6.**    This Stipulation, together with the Supplemental Agreement, constitutes the entire agreement between the Settling Parties related to the Settlement and supersedes any prior agreements. No representations, warranties, promises, inducements or other statements have been made to or relied upon by any Settling Party concerning this Stipulation, other than the representations, warranties and covenants expressly set forth herein and in the Supplemental Agreement. Plaintiffs, on behalf of himself and the Settlement Class, acknowledge and agree that

any and all other representations and warranties of any kind or nature, express or implied, are specifically disclaimed and were not relied upon in connection with this Stipulation. In entering this Stipulation, the Settling Parties relied solely upon their own knowledge and investigation. Except as otherwise provided herein, each Settling Party shall bear his or its own costs.

12.7.    This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Settling Parties, or their respective counsel or their respective successors in interest.

12.8.    This Stipulation shall be binding upon, and shall inure to the benefit of, the Settling Parties, and their respective agents, successors, executors, heirs, and assigns.

12.9.    The Released Parties who do not appear on the signature lines below, are acknowledged and agreed to be third party beneficiaries of this Stipulation and Settlement.

12.10.   The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

12.11.   This Stipulation may be executed in any number of counterparts by any of the signatories hereto and the transmission of an original signature page electronically (including by facsimile or portable document format) shall constitute valid execution of the Stipulation as if all signatories hereto had executed the same document. Copies of this Stipulation executed in counterpart shall constitute one agreement.

12.12.   This Stipulation and the Settlement, the Supplemental Agreement, and any and all disputes arising out of or relating in any way to this Stipulation, whether in contract, tort or otherwise, shall be governed by and construed in accordance with the laws of the State of New York without regard to conflict of laws principles.

**12.13.**  The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

**12.14.**  The Stipulation shall not be construed more strictly against one party hereto than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties, and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

**12.15.**  Plaintiffs, Lead Counsel, and the attorneys, staff, experts, and consultants assisting them in this Action agree that (a) they will not intentionally assist or cooperate with any person or entity in the pursuit of legal action related to the subject matter of this Action against the Released Parties, (b) they will not intentionally assist or cooperate with any person or entity seeking to publicly disparage or economically harm the Released Parties with respect to any matter relating to the subject matter of this Action, and (c) they will not discuss any confidential matters related to this Action, or the Settlement with anyone except in the prosecution of the Action against the remaining Defendants.

**12.16.**  All agreements by, between or among the Settling Parties, their respective counsel and their other advisors as to the confidentiality of information exchanged between or among them shall remain in full force and effect, and shall survive the execution and any termination of this Stipulation and the final consummation of the Settlement, if finally consummated, without regard to any of the conditions of the Settlement

**12.17.**  The Settling Parties shall not assert or pursue any action, claim or rights that any party violated any provision of Rule 11 of the Federal Rules of Civil Procedure, any corollary state

law rule or statute, and/or the PSLRA in connection with this Action, the Settlement, the Stipulation or the Supplemental Agreement. The Settling Parties agree that the Action was resolved in good faith following arm's-length bargaining, in full compliance with applicable requirements of good faith litigation under the Securities Exchange Act of 1934, Rule 11 of the Federal Rules of Civil Procedure, any corollary state law rule or statute, and/or the PSLRA.

**12.18.**  Any failure by any of the Settling Parties to insist upon the strict performance by any other Settling Party of any of the provisions of the Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Settling Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by the other Settling Parties.

**12.19.**  The waiver, express or implied, by any Settling Party of any breach or default by any other Settling Party in the performance of such Settling Party of its obligations under the Stipulation shall not be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

**12.20.**  The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation.

**IN WITNESS WHEREOF**, the Settling Parties have executed this Stipulation by their undersigned counsel effective as of the date set forth below.

Dated:  October 7, 2019

THE ROSEN LAW FIRM, P.A.

By: _____
Jonathan Horne, Esq.
Laurence M. Rosen, Esq.
Phillip Kim, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: jhorne@rosenlegal.com
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the proposed
Class*

Dated:  October 7, 2019                    **CATAFAGO FINI LLP**


By: <u>/s/ Tom M. Fini</u>
Tom M. Fini
The Empire State Building
350 Fifth Ave., Suite 7710
New York, NY 10118
Phone: (212) 239-9669
Fax: (212) 239-9688
Email: tom@catafagofini.com

*Counsel for Defendants 6D Global Technologies, Inc., Tejune Kang, Mark Szynkowski, and Terry McEwen*