

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH PUDDU, MARK GHITIS, VALERY BURLAK, and ADAM BUTTER, | |
| Plaintiff, | 15-cv-8061 (AJN) |
| –v– | OPINION & ORDER |
| 6D GLOBAL TECHNOLOGIES, INC., NYGG (ASIA), LTD., BENJAMIN TIANBING WEI A/K/A BENJAMIN WEY, TEJUNE KANG, MARK SZYNKOWSKI, TERRY MCEWEN, AND NYG CAPITAL LLC D/B/A NEW YORK GLOBAL GROUP, | |
| Defendants. | |

ALISON J. NATHAN, District Judge:

Defendant Benjamin Wey has moved to vacate the default entered against him in this case on April 30, 2019. For the reasons stated below, this motion is GRANTED.

**I.    BACKGROUND**

Plaintiffs, stockholders of Defendant 6D Global Technologies, Inc., initiated this putative securities class action by filing a Complaint on October 13, 2015. *See* Compl. (Dkt. No. 1). The Complaint has since been amended twice, and the operative pleading—the Second Amended Complaint—was filed on April 4, 2016. *See* Second Am. Compl. (Dkt. No. 107). The Second Amended Complaint alleges that Defendant Benjamin Wey, the alleged "unofficial CEO" of Defendant 6D, violated the federal securities laws by failing to disclose in numerous securities filings that he was the beneficial owner of 46% of 6D's stock that was held in the name of a China-based investment banking firm he controlled and that he conducted and controlled 6D's operations. *See* Second Am. Compl. ¶¶ 10, 86–195. It specifically alleges that Wey himself

1

violated Section 10(b) of the Exchange Act, Rule 10b-5, and Rule 20(a) of the Exchange Act as a controlling person of 6D. *Id.* ¶¶ 205–224. Wey argues that the Second Amended Complaint is devoid of any allegations that he made any affirmative misstatements or omissions that could support a fraud claim against him relating to 6D, fails to adequately allege his scienter, and fails to allege loss causation. *See generally* Dkt. No. 169.

As set out above, the original Complaint in this action was filed on October 13, 2015. Dkt. No. 1. Lead Plaintiffs were appointed on January 14, 2016, Dkt. No. 92, and Wey was served on January 16, 2016, by leaving the original Complaint and summons with the doorman of his building and mailing copies of both documents to him at the same address. *See* Dkt. No. 94. Plaintiffs did not request that the Clerk of Court enter a default against Wey until over two and a half years later, on September 27, 2018. Dkt. No. 134. On September 28, 2018, the Clerk of Court rejected the request because Plaintiffs had not served Wey with the Amended and Second Amended Complaints. Plaintiffs subsequently mailed Wey copies of the Amended and Second Amended Complaints and filed affirmations of service on the docket. *See* Dkt. Nos. 148, 153. On April 29, 2019, Plaintiffs again requested that the Clerk of Court enter a default against Wey, *see* Dkt. No. 157, and on April 30, 2019, the Clerk of Court entered a certificate of default against him, *see* Dkt. No. 161.

On June 13, 2019, Wey's counsel noticed an appearance on his behalf and filed a motion to dismiss the claims alleged in the Second Amended Complaint and strike portions thereof. *See* Dkt. Nos. 166, 167. On June 14, 2019, this Court directed the Clerk of Court to terminate that motion in light of the default that had previously been entered against Wey and ordered the parties to meet and confer regarding a proposed briefing schedule for any intended motion to vacate the default. *See* Dkt. No. 174. On June 24, 2019, the Court so ordered the parties'

proposed briefing schedule for Wey's motion to vacate the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. *See* Dkt. No. 184. This motion was fully briefed on August 9, 2019. *See* Dkt. Nos. 185, 194, 197.

## II. LEGAL STANDARD

Under Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . , the clerk must enter the party's default." However, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Courts consider three factors in determining whether "good cause" exists: "(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quoting *Guggenheim Capital, LLC v. Birnbaum,* 722 F.3d 444, 455 (2d Cir. 2013)).

These factors are construed generously, *id.*, in light of the Second Circuit's "strong preference for resolving disputes on the merits," *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (internal quotation marks omitted)). Moreover, though the same factors are examined in deciding whether to set aside a default judgment, courts apply the factors less rigorously where, as here, a defendant has moved to set aside entry of a default, because "the concepts of finality and litigation repose" are less deeply implicated in the latter action. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

A defendant's failure to meet one of these factors will not defeat a motion to vacate default if other factors weigh in favor of setting aside the default. *See Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 341 (S.D.N.Y. 2013) (collecting cases).

Moreover, "because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil*, 10 F.3d at 96.

## III. DISCUSSION

The Court considers each "good cause" factor in turn below and concludes that, on balance and in light of the "strong preference" in this Circuit for resolving cases on their merits, these factors weigh in favor of vacating the default in this case.

### A. Prejudice

The Court considers the last "good cause" factor first, because "[p]rejudice to the nondefaulting party is 'the single most persuasive reason for denying a Rule 55(c) motion . . . .'" *Murray Eng'g, P.C. v. Windermere Properties LLC*, No. 12-cv-52 (JPO), 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013) (quoting Wright & Miller, Federal Practice and Procedure § 2699 (3d ed. 2010)). As to this factor, the Second Circuit has made clear that "delay standing alone does not establish prejudice" in the context of a request to set aside an entry of default. *Enron Oil*, 10 F.3d at 98. "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotation marks omitted).

Here, the prejudice Plaintiffs assert is based, almost entirely, on pure speculation. They argue that were this Court to vacate the default, they may be unable to obtain relevant documents from Wey and 6D needed to prove their claims. Specifically, and without any support for their allegations, they argue that Wey has "probably already destroyed many of the documents that are in his possession" and that "key documents" may be destroyed in 6D's alleged impending

4

bankruptcy. Dkt. No. 194 at 12. The Court does not credit these unsupported loss of evidence allegations, and, without them, Plaintiffs' prejudice argument is founded on nothing more than delay. *See* Dkt. No. 194 at 12 ("Plaintiffs risk that witnesses' memories will fade during any stay of this four-year old action."). But "delay standing alone does not establish prejudice" in the context of a request to set aside an entry of default. *Enron Oil*, 10 F.3d at 98

Furthermore, Plaintiffs' prejudice argument is undermined by the fact that they took over two years to even request entry of a default in this case. *See supra* Section I. Such a delay on Plaintiffs' end "strongly suggests that some further delay will not unduly prejudice [them]." *See Enron Oil*, 10 F.3d at 98 ("The fact that plaintiff waited over a year before seeking such relief strongly suggests that some further delay will not unduly prejudice it."). Even if Plaintiffs are correct that they could not have requested entry of default against Wey between March 2017— when co-defendants' motion to dismiss was granted—and August 2018— when that dismissal was vacated—they do not adequately explain why they did not request an entry of default against Wey at any point prior to March 2017. *See* Dkt. No. 194 at 8. That the Private Securities Litigation Reform Act may have prevented them from seeking a *default judgment* against Wey while co-defendants' motion to dismiss was pending—a proposition Wey contests, *see* Dkt. No. 197 at 8 n.8 (citing *Rensel v Centra Tech, Inc.*, 2019 U.S. Dist. LEXIS 38633, at *6 (S.D. Fla. Mar. 8, 2019))—is, in any event, no excuse for their tarrying in seeking *entry of a default* against him.

Thus, because Plaintiffs have failed to establish prejudice and, indeed, have delayed themselves in seeking entry of a default against Wey, the Court concludes that this factor weighs in favor of vacating the default.

5

### B. Willfulness of Default

The Court next considers whether Wey's default was deliberate. In the context of a default, "willfulness" refers to "conduct that is more than merely negligent or careless, but is instead egregious and . . . not satisfactorily explained." *Bricklayers & Allied Craftworkers*, 779 F.3d at 186 (internal quotation marks omitted). However, "a finding of bad faith is [not] a necessary predicate to concluding that a defendant acted 'willfully.'" *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998). Instead, to find that a default was willful "it is sufficient to conclude that the defendant defaulted deliberately." *Bricklayers & Allied Craftworkers*, 779 F.3d at 187 (internal quotation marks omitted). Thus, if a defendant "does not deny that he received the complaint, the court's orders, . . . or that he never answered the complaint," and "does not contend that his non-compliance was due to circumstances beyond his control," a court can infer willfulness. *Guggenheim Capital*, 722 F.3d at 455; *see also S.E.C. v. McNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998) ("[D]efaults have been found willful where, for example, an attorney failed, for unexplained reasons, to respond to a motion for summary judgment, or failed, for flimsy reasons, to comply with scheduling orders[.]") (internal citations omitted)).

Here, Wey provides several satisfactory explanations for why he failed to timely respond to the complaint. *Cf. Rolex Watch U.S.A., Inc. v. City Styles 313, LLC*, No. 12-cv-4754 (AJN), 2012 WL 5992102, at *2 (S.D.N.Y. Nov. 29, 2012) (finding willfulness because defendant failed to provide the court with any explanation for his untimely submission). Setting to one side whether Wey was properly served, which the parties dispute, Wey asserts in his affidavit that his delay is attributable to the fact that he has no recollection of ever being served with any of the pleadings and therefore believed that he had not been served in this case. *See* Dkt. No. 187 ¶ 2.

6

Wey does concede—and the evidence very clearly indicates—that he was nonetheless *aware* that he had been named as a defendant in this case, *see, e.g.*, Dkt. No. 195-1 (Mar. 9, 2017 tweet by Wey referencing the grant of co-defendants' motion to dismiss), but he argues that he was *not* aware that his time to respond had begun to run, *see* Dkt. No. 188 at 6. If he had been aware of that fact, he argues, he would have immediately responded and sough a stay of this case in light of the criminal prosecution that was then pending against him. *See id.* at 7. Indeed, Wey did just that in the Securities and Exchange Commission enforcement action that was filed against him just one month prior to when this case was initiated. *See Securities and Exchange Commission*, No. 15-cv-7116 (PCK), Dkt. No. 103 (S.D.N.Y. June 9, 2016) (granting stay). This fact, he argues, cuts against any finding that his default was deliberate, because there was no litigation advantage to be had in delaying. *Cf. Kulwa v. Obiakor OB/GYN P.C.*, No. 12-cv-1868 (JG) (MDG), 2013 WL 504383, at *4 (E.D.N.Y. Feb. 8, 2013) (finding default willful where it was "calculated to advance defendants' interests in delaying the day when they had to address the allegations levied against them"). Furthermore, Wey argues that his voluntary attendance at a settlement conference in this matter before Magistrate Judge Netburn in late 2018 and his filing of a motion to dismiss very shortly after the certificate of default was entered against him both cut against any finding that his default was deliberate. *See* Dkt. No. 188 at 6–7.

Plaintiffs rely heavily on Wey's actual notice of this case as evidence of the fact that his default was deliberate, *see* Dkt. No. 194 at 8–10, but they do not contend with his concession that he *was* aware of this litigation but nonetheless believed his time to respond had not yet begun to run. Indeed, they have no explanation for why Wey would have voluntarily appeared before the Court in a settlement conference had he been in deliberate defiance of his obligation to respond. They further argue that a stay of this action would not have been a guarantee, Dkt. No.

7

194 at 10, but this argument misses the mark. The relevant consideration is not whether a stay would have been a guarantee, but rather whether Wey's failure to appear and seek a stay, as he did in the SEC enforcement action against him, bolsters his assertion that he was unaware of his obligation to respond in this action. The Court believes that it does. Finally, Plaintiffs argue that Wey did, in fact, have a litigation advantage to gain by deliberately defaulting: paying attorneys to defend him in this action would have undermined his negotiating position in another case in which he was arguing that he was impecunious. *Id.* at 11. However, this argument is undercut by the fact that paying attorneys to defend him in this action may have amounted to nothing more—at least initially—than litigating a stay motion. Accordingly, the Court does not credit Plaintiffs' speculative argument that Wey had some litigation advantage to gain in *other litigations* to which he was a party by defaulting in this one.

While it may have been careless or even grossly negligent for Wey—a sophisticated businessman who is no stranger to litigation—to sit by and await service of the pleadings having been made aware of the fact that he had been named as a Defendant in this action, the Court cannot conclude—in light of his explanations and resolving all doubts in his favor—that Wey's actions rise to the level of willfulness. Though it is a close call, the Court concludes that this factor weighs in favor of vacating the default.

### C. Meritorious Defenses

Turning to the final factor, whether Wey has any meritorious defenses, "[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil Corp.*, 10 F.3d at 98 (internal citations omitted). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.*

8

"The defaulting defendant 'need only meet a low threshold to satisfy this factor.'" *Gench v. HostGator.com LLC*, No. 14-cv-3592 (RA) (GWG), 2015 WL 3757120, at *5 (S.D.N.Y. June 17, 2015) (quoting *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014)); *see also Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (A defense "need not be ultimately persuasive at this stage" to satisfy this factor.). A court will find that a "defendant's allegations are meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense." *Sea Hope Navigation Inc*, 978 F. Supp. 2d at 339 (quoting *Weisel v. Pischel*, 197 F.R.D. 231, 239 (E.D.N.Y. 2000)). Nonetheless, a defendant must do more than offer "conclusory assertions" in an affidavit or simply "dispute the amount of damages[.]" *Bricklayers & Allied Craftworkers*, 779 F.3d at 187.

Here, Wey has met the low threshold necessary to satisfy this factor. A review of the Second Amended Complaint reveals that the securities claims asserted against Wey could be vulnerable to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Indeed, though the motion was terminated due to his default, *see* Dkt. No. 167, Wey has filed a motion to dismiss in this case that "contains detailed analyses of facts and legal contentions that [he] maintain[s] are warranted by existing law." *Sardarian v. Fed. Emergency Mgmt. Agency*, 2020 WL 1542374, at *5–6 (D. Conn. Jan. 9, 2020). Wey refers to his terminated motion to dismiss in his briefing on this motion and reiterates the arguments made therein here.[1] On this basis, the "meritorious defense" factor supports Wey's request for relief. *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173–74 (2d Cir. 2001) (finding that because claims asserted in appellants 12(b)(6) motion, "if proven at

---

[1] The Court agrees with Wey that the bases for his defenses are outlined in his briefing on this motion, *see* Dkt. No. 197 at 9 n.9, and thus does not address Plaintiffs' request that the Court not consider Wey's terminated memorandum of law here, *see* Dkt. No. 194 at 6.

trial, would constitute a complete defense, appellants have demonstrated a meritorious defense for purposes of vacating the default judgment entered against them"); *Davis*, 713 F.2d at 916 (finding, with respect to this factor, that "the motion papers submitted to the district judge were sufficient to raise a serious question as to whether the second complaint stated a claim upon which any relief could be granted"); *Sardarian*, 2020 WL 1542374, at **5–6 ("The Court concludes that in filing their motion to dismiss, Defendants have fulfilled the second factor for the Court to set aside the default.  Although they have not established their defenses conclusively, they have 'present[ed] evidence of facts' and legal authorities that may potentially 'constitute a complete defense.'" (quoting *McNulty*, 137 F.3d at 740)); *Saunders v. Morton*, 269 F.R.D. 387, 403 (D. Vt. 2010).

Accordingly, the Court concludes that this factor also weighs in favor of vacating the default.

### D.  Balance of the Factors

All three factors weigh in favor of vacating the default: Plaintiffs will not suffer any prejudice if the entry of default is set aside, the default was not willful, and Wey has potentially meritorious defenses.  While the first and third factors clearly weight in favor of setting aside the entry of default, the Court recognizes that Wey's actions in sitting idly by even after learning that this action had been filed against him came close to rendering the default willful.  Though the Court ultimately concluded above that Wey's default was *not* willful, a contrary conclusion would not alter the balance of the factors, which would still weigh in favor of vacating the default.  *See Sea Hope Navigation Inc.*, 978 F. Supp. 2d at 341 (collecting cases in which vacatur was warranted in spite of willfulness of default).  To be sure, even were the Court to conclude that the default *was* willful, it would resolve any doubt as to whether the default should be

vacated in Defendants' favor and vacate the default nonetheless. *See Enron Oil Corp.*, 10 F.3d at 96 ("[Wh]en doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party.").

### E. Plaintiffs' Request for Conditional Vacatur

Having concluded that the default should be vacated in this case, the Court considers Plaintiffs' alternative request that the Court condition vacatur on Wey's waiver of his right to file any motion to dismiss or motion for judgment on the pleadings. *See* Dkt. No. 194 at 15–16.

The Second Circuit has held that, "[i]n determining whether to exercise its discretion to set aside a default, a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party." *Powerserve Int'l*, 239 F.3d at 515 (citation omitted). Though a district court has "substantial flexibility" in fashioning an appropriate remedy, *Nat. Organics, Inc. v. TRC Nutritional Labs., Inc.*, 2009 WL 2957816, at *2 (E.D.N.Y. Sept. 10, 2009), the Court is unaware of any case in which a court has conditioned vacatur on a defendant's waiver of a right to file a potentially dispositive motion, and Plaintiffs do not provide any authority for their request. The Court does not believe that such a condition is reasonable here.

However, one such condition that is routinely imposed is the requirement that the defaulting party reimburse the plaintiff its reasonable attorneys' fees and costs incurred as a result of the default. *See, e.g.*, *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 52 (E.D.N.Y. 2008) ("[C]ourts in this Circuit have 'consistently' permitted an 'award of attorney's fees incurred in bringing the default motion as a condition to vacating a default judgment.'" (quoting *Richardson v. Nassau County*, 184 F.R.D. 497, 503 (E.D.N.Y. 1999))). The Court will consider—and is likely to grant—a request for reasonable attorneys' fees and costs. The parties shall meet and

11

confer within 7 days of the date of this Opinion and Order to see if they can reach resolution on reasonable attorneys' fees and costs. If they are unable to do so, Plaintiffs may file a request for such fees and costs with the Court within 14 days of the date of this Opinion and Order.

## IV.    CONCLUSION

The Court grants Wey's motion to vacate the default entered against him. Wey is ordered to respond to Plaintiffs' Second Amended Complaint within 14 days of the date of this Opinion and Order. Also within 14 days of the date of this Opinion and Order, Plaintiffs may, if necessary, submit letter briefing requesting that Wey pay their fees and costs in filing for the entry of default.

This resolves Dkt. No. 185.

SO ORDERED.

Dated: May 31, 2020
        New York, New York

_____
ALISON J. NATHAN
United States District Judge