USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/12/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Joseph Puddu, *et al.*,

            Plaintiffs,

–v–

6D Global Technologies, Inc., *et al.*,

            Defendants.

15-cv-8061 (AJN)

MEMORANDUM
OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

    On October 1, 2020, the Court granted preliminary approval of the proposed settlement agreement between Plaintiffs and Defendants 6D Global Technologies, Inc., Tejune Kang, Mark Szynkowski, and Terry McEwen. *See* Dkt. No. 227. A hearing was held on February 23, 2021, during which time the Court heard Plaintiffs' Motion for Final Approval of the Class Action Settlement and their Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs. Having considered the written submissions of the parties, having held a final fairness hearing, and having considered the arguments offered at that hearing, it is hereby ordered that the Class is finally certified and the Settlement is finally approved.

**I.    BACKGROUND**

    The Court presumes the parties' familiarity with this matter. The procedural history was recounted at length in the briefing papers in support of preliminary and final settlement approval, *see* Dkt. No. 206 at 2–3, Dkt. No. 230 at 5–6, and it was discussed at greater length at the February 23, 2021 fairness hearing.

**II.    CLASS CERTIFICATION**

The settlement defines the class as

> all persons that purchased or acquired 6D Global Technologies, Inc. (f/k/a CleanTech Innovations, Inc.) securities between June 16, 2014 and September 10, 2015, both dates inclusive (the "Settlement Class Period") excluding: (i)Defendants; (ii) current and former officers and directors of 6D Global and any other Released Party; (iii) the persons expressly excluded from the definition of Released Parties in paragraph1.31 (a) through (o); (iv) the respective spouses, children, or parents of any person or entity excluded under subparagraphs, (i) through (iii) of this paragraph; (v) any person or entity more than 5% owned or directly or indirectly controlled by any person or entity excluded under subparagraphs (i) through (iv) of this paragraph or any trust of which such a person is a beneficiary or of which any person or entity is related or affiliated to a beneficiary or a trustee; (vi) the respective heirs, successors, trustees and assigns of any person excluded under paragraphs (i)through (v); and (vii) those persons who file valid and timely requests for exclusion in accordance with the Court's Order of Preliminary Approval of Settlement ("Preliminary Approval Order"). Plaintiffs may take discovery to determine whether any claimant is an excluded person.

Stipulation and Agreement of Settlement, Dkt. No. 205, ¶ 1.34.

For the reasons set forth below, for purposes of this settlement only, the Class is certified because it satisfies the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### A. The Settlement Meets the Rule 23(a) Criteria

Rule 23(a) imposes four threshold requirements for class certification: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a).

For class certification to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1); *In*

*re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 69–70 (S.D.N.Y. 2009). In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Furthermore, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010) (citation omitted). Here, 6D's stock was publicly traded, and at the end of the class period, there were around 19.5 million shares not held by the Defendants. Joinder of all of the individual members of the proposed class would at least be "difficult or inconvenient enough to make class treatment appropriate." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 340–41 (S.D.N.Y. 2015). The Court concludes that the numerosity requirement is satisfied.

Commonality and typicality are also satisfied. The commonality requirement examines class's claims "depend upon a common contention . . . capable of classwide resolution" such that "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Courts in securities class action cases have "permissively" applied the commonality requirement "in the context of securities fraud litigation." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. at 341. Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quotation omitted).

There are clear common questions of law or fact in this case. Plaintiffs charge defendants with a common course of conduct which focuses on misrepresentations that appeared in 6D's

public filings and statements. A similar logic governs the typicality analysis. Plaintiffs purchased 6D shared at prices that they posit were artificially inflated due to the Defendants' allegedly false or misleading statements. Since the class is defined as those who purchased shares during the class period, the typicality requirement is met here; the claims all stem from the same allegedly unlawful conduct, which affected plaintiffs and the class members equally.

Lead Plaintiffs also provide adequate representation. Their interests are aligned with those of the class and their claims and the claims of other class members arise out of the same course of conduct. Furthermore, Plaintiffs' counsel have significant experience litigating these kinds of cases. *See, e.g.*, *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008) ("[T]he Rosen Law Firm is well-qualified to serve as lead counsel in this matter.").

### B. The Settlement Class Meets the Relevant Rule 23(b)(3) Criteria

To meet the requirements of Rule 23(b)(3), the Court must also conclude "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The issues in the class action that are "subject to generalized proof, and thus applicable to the class as a whole" must "predominate over those issues subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (citation omitted). When determining issue predominance for a settlement class, a district court should focus on "whether the legal or factual questions that qualify each class member's case as a genuine controversy are sufficiently similar as to yield a cohesive class." *In re Am. Int'l Group Secs. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (cleaned up). Throughout, "[t]he focus of the predominance inquiry is on defendants' liability, not on damages." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125

(S.D.N.Y. 2011). Here the common issue that binds the class together is whether Defendants' misrepresentations in filings artificially inflated the stock price, which predominates over any issues that might be subject to more individualized proof.

The Court also deems the class action to be superior to other forms of litigation. Many class members would either lack the resources or the financial incentive to prosecute their claims on their own, especially due to the uniquely complicated and expensive nature of securities fraud cases. *See In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04-CV-8144 (CM), 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). For many class members, "proceeding individually would be prohibitive due to the minimal recovery." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).

## III. NOTICE WAS APPROPRIATE

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (Friendly, J.)).

Pursuant to the Preliminary Approval Order, Settlement Class Members were notified about the Settlement by: (a) receiving an email with the Summary Notice for those for which the Strategic Claims Services, the class action administration firm that handled this, was able to obtain email addresses; or (b) receiving a Postcard Notice if no email address could be obtained. Further, Summary Notice was disseminated on *GlobeNewswire*. The Claims Administrator also

posted the Long Notice and Proof of Claim on its website, which provided a link for online claim filing and listed important deadlines. *See* Dkt. No. 234-1, Bravata Decl., ¶¶ 3-9, 11. The Notice advised potential class members of the terms of the Settlement and Plan of Allocation; that Lead Counsel would seek a fee award not to exceed one-third of the Settlement Amount attributable to the efforts of Lead Counsel in the Action, recovery of actual litigation expenses not to exceed $65,000, and an award to Plaintiffs of $1,500 each (or $6,000 in total); and that any objections to any aspect of the Settlement or to the fee and expense request were due to be postmarked by February 2, 2021. Dkt. No. 234-1, Bravata Decl., Ex. D. Having reviewed the written notice, the Court concludes that class members were fairly apprised of the terms of the proposed settlement and of the options that were open to them in connection with the proceedings. *See Wal-Mart Stores, Inc.*, 396 F.3d at 114; *see also* Dkt. No. 234-1, Bravata Decl. ¶ 6 & Ex. D.

## IV. THE SETTLEMENT IS FINALLY APPROVED

A district court's approval of a settlement is contingent on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This entails a review of both procedural and substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). In conducting this review, the Court should be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Id.* at 117 (quotation omitted).

### A. The Settlement Is Procedurally Fair

With respect to procedural fairness, a proposed settlement is presumed fair, reasonable, and adequate if it culminates from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quotation omitted). Additionally, "the quality of representation is best measured by results." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) (quotation omitted).

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel." *Wal-Mart*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)). Counsel for both sides are capable and experienced. As already noted, the Rosen Law Firm has significant experience prosecuting securities class actions, and courts have recognized their competence in this regard. *See* Dkt. No. 234, Horne Decl., Ex. B. K&L Gates, who represented the Defendants, are also capable and experienced. Dkt. No. 234, Horne Decl. ¶ 15. Courts have also recognized a presumption of fairness when a settlement is reached with the assistance of a mediator. *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014). Here, the parties reached negotiation only after three unsuccessful mediations. Furthermore, the long procedural history of this case evinces that the parties—far from colluding—aggressively litigated this case and reached this settlement only after years of litigation.

Overall, the Court concludes that the settlement is procedurally fair.

### B. The Settlement Is Substantively Fair

In assessing substantive fairness, the Court considers the factors detailed by the Second Circuit in *City of Detroit v. Grinnell Corporation*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (citations omitted); *see also Wal-Mart*, 396 F.3d at 117. The Court finds that these factors, individually and weighed against one another, counsel approval of the settlement.

### 1. The Complexity, Expense and Likely Duration of the Litigation

Litigation through trial would be complex and expensive. This action involves complex legal questions that require proof of, among other things, materiality, loss causation, scienter, and damages. It has long been recognized that securities class action "is notably difficult and notoriously uncertain." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (collecting cases) (cleaned up). The Court concludes that this factor weighs in favor of approving the proposed settlement.

### 2. The Reaction to the Class of the Settlement

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118. Furthermore, a lack of objection is often seen as strong evidence of the settlement's fairness. *Grinnell,* 495 F.2d at 462 (approving settlement where 20 objectors appeared from group of 14,156 claimants). As discussed, notice in this case was adequate, and no class members opted out of the class or otherwise objected to the terms of the settlement. Indeed, there were no objectors at the fairness hearing itself. Accordingly, this factor strongly favors approval.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

While the parties need not have engaged in extensive discovery, *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir.1982), a sufficient factual investigation must have been conducted to afford the Court the opportunity to "'intelligently make . . . an appraisal' of the Settlement." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quoting *Plummer*, 668 F.2d at 660). In addition, "the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (alterations in original) (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y.1998)).

Prior to reaching this settlement agreement, Plaintiffs (1) investigated the claims in this action to plead an initial complaint and filed two detailed amended complaints, which involved scouring public records and investigating the claims at issue; (2) responded to Settling Defendants' motion to dismiss the Complaint; (3) successfully appealed the order dismissing the Complaint; and (4) spent years negotiating the Settlement. The parties were intimately familiar with the facts of this case, and their level of involvement supports the Court's conclusion that the parties conducted a sufficient factual investigation prior to reaching the settlement agreement. This factor favors approval, as well.

#### 4. The Risks of Establishing Liability and Damages

"Securities litigation generally involves complex issues of fact and law[.]" *Athale v. Sinotech Energy Ltd.*, No. 11-CV-05831 (AJN), 2013 WL 11310686, at *5 (S.D.N.Y. Sept. 4, 2013) (quoting *In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 161 (S.D.N.Y. 2011)). Where, as here, actions are brought pursuant to the Exchange Act, the risks of establishing liability are heightened, as Plaintiffs must also establish that such misstatements or omissions of material fact were made with *scienter. See Ernst & Ernst v. Hochfelder,* 425 U.S.

185, 193 n.12 (1976); *In re Am. Bank Note Holographies, Inc.,* 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) (explaining that there is "substantial risk involved in proving *scienter,* because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult").

In addition, "[p]roving damages in these actions can also be complicated and uncertain, particularly in cases such as this that require proof of loss causation." *Athale*, 2013 WL 11310686, at *5. Proving damages under § 10(b) of the Exchange Act would also lead to competing expert testimony, introducing natural uncertainty into the damages estimation process. *See In re Bear Stearns Cos.,* 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). All of these risks are compounded by the fact that Defendants would vigorously contest the claims. Ultimately, the nature of securities fraud claims generally and the nature of the facts of this case in particular also support approval of the proposed settlement.

### 5. The Risks of Maintaining the Class Action Through the Trial

There is no assurance that Lead Plaintiffs' motion for class certification would be granted, and the Settling Defendants would likely have challenged class certification were they have continued in this litigation. That provides some support for approval. *See Athale*, 2013 WL 11310686, at *6.

### 6. The Ability of the Defendant to Withstand a Greater Judgment

As discussed at greater length at the February 23, 2021 fairness hearing, this factor also supports approval. Among other things, the class action settlement is being funded in part by the settlement in the related derivative action, which provides support for the proposition that if the Settling Defendants *could* withstand a greater judgment, it would not be to such an extent as to weigh against settlement. *See* Dkt. No. 234, Horne Decl. ¶ 12-13. And while the Court concludes that the Settling Defendants likely could not withstand a greater judgment, even if

they could, that, standing alone, would not suggest that a settlement is unfair. *See In re Austrian & German Bank Holocaust Litig.,* 80 F.Supp.2d 164, 178 n.9 (S.D.N.Y. 2000).

### 7. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all of the Attendant Risks of Litigation

"It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (citation omitted). Indeed, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. "[T]here is a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) (Friendly, J.).

Here, the Plaintiffs received 415 claim forms as of the date that claims were due, and of those, 180 claims were deemed valid. *See* Dkt. No. 235-1, Supp. Bravada Decl. ¶ 9. Of the 180 valid claims, the recognized losses were $3,436,987. *Id.* That amounts to a rough recovery of 6.05% of the valid claimants' recognized losses. Dkt. No. 235 at 3. Ultimately, "the question for the Court is not whether the settlement represents the highest recovery possible — which it does not — but whether it represents a reasonable one in light of the many uncertainties the class faces—which it does." *Athale*, 2013 WL 11310686, at *7 (citation omitted). The risks described above, coupled with the numbers provided by the Plaintiffs, support the Court's conclusion that this factor weighs in favor of approval.

\*   \*   \*

Assessing the *Grinnell* factors individually and weighing them against each other, the Court finds the settlement to be fair, reasonable, and adequate. The Court also finds the plan of allocation, which efficiently and fairly allocates the fund to the Settlement class members on a per-share basis, to be fair, reasonable, and adequate. *See* Dkt. No. 234-1 at 7–8.

## V. THE ATTORNEYS' FEES AND EXPENSES ARE REASONABLE

It is well-established that in a class action settlement like this one counsel may be entitled to a "reasonable fee." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47, 49 (2d Cir. 2000) (listing the factors to be considered). Class Counsel are also entitled to be reimbursed for litigation costs and expenses. See *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Furthermore, in the Second Circuit, Class Plaintiffs may receive additional payments as "incentive awards." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

Lead Counsel seeks attorneys' fees in the amount of one-third (33.3%) of the Settlement Fund, or $133,333.33, together with a proportionate share of the interest earned on the fund, at the same rate as earned by the balance of the fund, from the date of the establishment of the fund to the date of payment. They also seek expenses in the amount of $52,663.79. *See* 15 U.S.C. § 77z–1(a)(6).

Applying the percentage method, 33.3% is within the range of fee awards typically awarded. See *Springer v. Code Rebel Corp.*, No. 16-cv-3492, 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (describing award of 33.3% of a common fund as "well within the range of fee awards typically awarded"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 587-88 (S.D.N.Y. 2008). When the lodestar method applied, the multiplier is a negative multiplier of 0.22. *See* Dkt. No. 233 at 10; *see also* Dkt. No. 234, Horne Decl. ¶ 16. *See Goldberger*, 209 F.3d at 47. Due to the long procedural history of this case, class counsel claims to have spent

809.53 hours on this matter, yielding an aggregate lodestar amount of $601,834. Dkt. No. 234, Horne Decl. ¶ 16. The requested attorneys' fees are thus reasonable.

The requested expenses are also reasonable. Those litigation expenses funded the costs of financial experts, investigator fees, court filing fees, including those incurred when the Plaintiffs appealed to the Second Circuit, and mediation fees. *See* Dkt. No. 233 at 12. The Plaintiffs also provided support for the requested numbers, *See* Dkt. No. 234-2, Fee Decl., and the expenses were both reasonable and necessary to achieve the Settlement. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010).

Finally, in light of the efforts they expended for the benefit of the class, an incentive award of $1,500 per Lead Plaintiff is appropriate. Although Lead Plaintiffs may not have undertaken significant risk in agreeing to serve as class representatives, the award they seek is correspondingly minimal. *See Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (describing payments ranging from $2,500 to $85,000). Moreover, they spent years monitoring news on the company, reviewing the initial and amended pleadings, discussing the appeal, and communicating and corresponding with Lead Counsel regarding the litigation and settlement. *See* Dkt. No. 233 at 13–14. The award is correspondingly adequate.

## VI. CONCLUSION

For the reasons stated, the Settlement is determined to be fair, reasonable, and adequate. Accordingly, Plaintiffs' Motion for Final Approval of the Class Action Settlement and Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs are both GRANTED. For the reasons stated above, the Court will enter the parties' Proposed Order and Partial Final Judgment and Proposed Order Awarding Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs.

This resolves Dkt. Nos. 229 and 231.

SO ORDERED.

Dated: May 12, 2021
       New York, New York

_____
ALISON J. NATHAN
United States District Judge