```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
JOSEPH PUDDU, MARK GHITIS, VALERY        :
BURLAK, and ADAM BUTTER,                 :
                                         :
                    Plaintiffs,          :
                                         :
          -v-                            :
                                         :
NYGG (ASIA) LTD. and BENJAMIN TINBIANG   :
WEI a/k/a/ BENJAMIN WEY,                 :
                                         :
                    Defendants.          :
                                         :   15cv8061 (DLC)
---------------------------------------- :
                                         :   OPINION AND ORDER
                                         :
BENJAMIN TINBIANG WEI a/k/a/ BENJAMIN    :
WEY,                                     :
                                         :
                    Third-Party Plaintiff,:
                                         :
          -v-                            :
                                         :
BDO USA, LLP and ADAM HARTUNG,           :
                                         :
                    Third-Party Defendants.:
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiffs:
Jonathan Richard Horne
Phillip C. Kim
Michael Alex Cohen
275 Madison Avenue
34th Floor
New York, NY 10016

For defendants:
Warren Angelo Raiti
Warren Raiti
1345 Avenue of the Americas
Ste 33rd Floor

```
New York, NY 10105

Adam Brad Sherman
Tom M. Fini
Catafago Fini LLP
One Grand Central Placec
Ste 47th Floor
New York, NY 10165

For third-party defendant BDO USA, LLP:
Timothy E. Hoeffner
Jason Daniel Gerstein
McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, NY 10017

For third-party defendant Adam Hartung:
Daniel H. Roseman
Hinman Howard & Kattell, LLP
707 Westchester Avenue
Suite 407
White Plains, NY 10604

Howard L. Teplinsky
Roenan Patt
Levin Ginsburg
180 N. LaSalle Street
Suite 3200
Chicago, IL 60601
```

DENISE COTE, District Judge:

Defendant Benjamin Wey has sued third-party defendants BDO USA, LLP and Adam Hartung for contribution and indemnification. The third-party defendants have each moved to dismiss the First Amended Third-Party Complaint ("FATPC"). For the following reasons, both motions are granted.

## Background

This Court assumes familiarity with the prior Opinions issued in this case and summarizes only the facts necessary to

decide this motion. See Puddu v. 6D Global Techs., Inc., 239 F. Supp. 3d 694 (S.D.N.Y. 2017), vacated in part, 742 F. App'x 553 (2d Cir. 2018); Puddu v. 6D Global Techs., Inc., No. 15CV08061, 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021). The following facts are taken from the plaintiffs' Second Amended Complaint ("SAC") and the FATPC, and are assumed to be true for the purposes of these motions.

I.    Factual Background

Benjamin Wey is an investment banker and stock promoter. Wey owned and controlled a New York-based consulting firm, New York Global Group, Inc. ("NYGG"), as well as a China-based investment banking firm, NYGG (Asia), Ltd. ("NYGG (Asia)"). Wey helped NYGG (Asia)'s clients -- usually companies based in China -- obtain a listing on a U.S. stock exchange by arranging for them to be acquired by a U.S. shell company. In the process, Wey and his affiliates would obtain substantially all of the clients' stock, and would misrepresent the number of shareholders to a stock exchange in order to obtain a listing. Wey would then organize trades to manipulate the stock price. Finally, Wey would sell his holdings in the client company at an inflated price, after which its share price would plummet.

In 2010, Wey arranged to have CleanTech Innovations, Inc. ("CleanTech"), an NYGG (Asia) client, listed on NASDAQ. Shortly after it was listed, however, NASDAQ delisted CleanTech, finding

3

that it had not sufficiently disclosed its relationship with Wey.  This delisting occurred before Wey had the opportunity to sell his own shares in the company, and although CleanTeach was eventually relisted, CleanTech's share price had dropped significantly as a result of the delisting.  To cover his losses, Wey arranged for 6D Global Technologies, Inc. ("6D"), another company listed on the NASDAQ, to acquire CleanTech.

In order to avoid being delisted itself, 6D did not disclose its relationship with NYGG or Wey.  In 2015, the SEC brought an indictment and lawsuit against NYGG and Wey for securities fraud in connection with their investment in CleanTech.  The SEC revealed that Wey was the beneficial owner of NYGG (Asia), which held shares of 6D.  Once NASDAQ discovered Wey's relationship with 6D, it immediately halted the trading of 6D stock, and shortly thereafter delisted it.  6D appealed the delisting.

6D retained BDO USA, LLP ("BDO") to audit its 2015 financial statements.  During the audit, BDO determined that Wey had violated 6D's internal controls, and that Tejune Kang, 6D's CEO, had repeatedly lied to 6D's board.  When Kang refused to resign, and 6D's board declined to terminate him, BDO withdrew on March 17, 2016.  Six days later, NASDAQ denied 6D's appeal of its delisting decision, causing 6D's share price to plummet.

II.  Third-Party Allegations

Wey alleges that he did not improperly influence 6D or Kang, and that NASDAQ's delisting of 6D stock was caused by the negligence or recklessness of BDO and/or the Chair of 6D's audit committee, Adam Hartung, whom Wey has named as third-party defendants.  Wey claims that, when NASDAQ raised concerns about his relationship with 6D, its concerns were immediately addressed: 6D and Kang promptly severed all ties with Wey, and NYGG (Asia) delegated its voting rights to a proxy.  Wey attributes NASDAQ's decision to delist 6D to a smear campaign by BDO and Hartung against him and Kang.

After NASDAQ's initial delisting decision, BDO informed 6D that it would resign unless 6D underwent an audit to address NASDAQ's concerns.  Wey alleges that Hartung and BDO attempted to delay the audit by expanding its scope, raising various objections, and providing false information.  Wey alleges that Hartung overstated Kang's relationship with Wey, and attempted to portray Kang as dishonest, because he wanted to replace Kang as CEO.  The audit found no evidence that Wey exercised undue influence over 6D's board or manipulated its stock price.

At the same time, BDO stated that it was unable to rely on Kang's statements, and threatened to resign if Kang was not removed.  After the board of directors declined to remove Kang, BDO resigned days before 6D's annual disclosures were due.  As a

5

result, 6D was forced to file a Form 12b-25, indicating that it had suffered losses in the past year but would not be able timely to publish its annual disclosure.  NASDAQ then denied 6D's appeal of the delisting decision.  Wey alleges that it was BDO's resignation and Hartung's accusations against Wang, rather than Wey's own relationship with 6D, that caused NASDAQ to deny 6D's appeal from the delisting.

III. Procedural History

The plaintiffs filed this action on October 13, 2015, and filed the SAC on April 4, 2016, bringing claims on behalf of a putative class of 6D shareholders against 6D, Wey, and various other defendants for violations of the Securities Exchange Act.  The SAC asserts no claims against BDO or Hartung.  On March 6, 2017 The Honorable Robert W. Sweet granted the defendants' motion to dismiss the SAC.  <u>Puddu v. 7D Global Techs. ,Inc.</u>, 239 F. Supp. 3d 694 (S.D.N.Y. 2017).  That decision was appealed, and was largely vacated.  742 F. App'x 553 (2d Cir. 2018).

On remand, the case was reassigned to the Honorable Allison J. Nathan.  Wey had yet to appear, however, and a certificate of default was issued on September 28, 2018.  On May 15, 2019, the plaintiffs announced that they had reached a settlement with the defendants who had made an appearance.  The settlement as approved on May 12, 2021.  <u>Puddu v. 6D Global techs., Inc.</u>, 2021

WL 1910656 (S.D.N.Y. May 12, 2021). The only remaining defendants in the action were Wey and NYGG (Asia).

Wey first made an appearance during these settlement discussions. On May 31, 2020, Judge Nathan vacated the entry of the default against Wey. Puddu v. 6D Global Techs., Inc., No. 15CV08061, 2020 WL 2833852 (S.D.N.Y. May 31, 2020). Shortly thereafter, Wey moved to dismiss the SAC, and his motion was denied on March 30, 2021. Puddu v. 6D Global Techs., Inc., No. 15CV08061, 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021). Discovery is ongoing.

On May 7, 2021, Wey filed a third-party complaint against BDO and Hartung, seeking contribution and indemnification from them for damages arising out of the claims brought against Wey in the SAC. The third-party defendants moved to dismiss the third-party complaint on August 11. Wey filed the FATPC on September 22. The third-party defendants moved to dismiss the FATPC on October 29. The motions became fully submitted on December 21. The case was reassigned to this Court on April 10, 2022.

## Discussion

In order to survive a motion to dismiss for failure to state a claim, "[t]he complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1076–77

7

(2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted).

A defendant may, as a third-party plaintiff, implead "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). A party may therefore implead a third-party defendant for contribution or indemnification. See, e.g., Bank of India v. Trendi Sportswear, Inc., 239 F.3d 428, 436-37 (2d Cir. 2000); Andrulonis v. United States, 26 F.3d 1224, 1233 (2d Cir. 1994). Impleader is not appropriate, however, merely because the third-party defendant "may be liable to the plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 368 n.3 (1978).

I. Contribution

Wey seeks contribution from Hartung and BDO. Contribution allows a defendant to "recover proportional shares of the judgment from other joint tortfeasors whose negligence

contributed to the injury and who are also liable to the plaintiff."  Zapico v. Bucyrus-Erie Co., 579 F.2d 714, 718 (2d Cir. 1978).  "[U]nder the securities laws, a person who has defrauded the plaintiff in violation of those laws may be liable for contribution to another person who has similarly defrauded the plaintiff."  Sirota v. Solitron Devices, Inc., 673 F.2d 566, 578 (2d Cir. 1982) (citation omitted).  Because contribution is only available among "joint tortfeasors", however, courts in this district have held that, to receive contribution for violations of securities law, a third-party plaintiff must allege that the third-party defendant also violated securities law.  See Steed Fin. LDC v. Laser Advisers, Inc., 258 F. Supp. 2d 272, 282 (S.D.N.Y. 2003); Gabriel Capital, L.P. v. Natwest Fin., Inc., 137 F. Supp. 2d 251, 259-60 (S.D.N.Y. 2000) (listing cases).

The FATPC contains brief and conclusory allegations that the third-party defendants violated § 10(b) of the Securities Exchange Act.  In opposition, however, Wey has abandoned any theory that the third-party defendants are liable for contribution due to their own securities law violations.  Wey argues that contribution is available under New York law because the damages he is accused of causing were actually caused by the third-party defendants' negligence or recklessness.  Unlike federal securities law, the right of contribution under New York

law "may be invoked against concurrent, successive, independent, alternative, and even intentional tortfeasors." Raquet v. Braun, 90 N.Y.2d 177, 183 (1997).

When a party brings an action under a federal statute, "[t]he ultimate question . . . is whether Congress intended to create the private remedy -- for example, a right to contribution -- that the [party] seeks to invoke." N.W. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77, 92 (1981).  Claims for contribution under securities law, however, are limited to joint tortfeasors who have together defrauded the plaintiff.  Sirota, 673 F.2d 578.  Wey may of course defend this action by denying wrongdoing and by attempting to shift any blame to others.  But because Wey does not argue that the third-party defendants participated in the fraud alleged against him in the SAC, he may not bring a claim for contribution under federal securities law.

Nor can Wey circumvent this limitation by bringing a claim for contribution under state law, as he attempts to do in opposition to this motion.  Courts in this Circuit have repeatedly held that, when a defendant is sued under federal law, the absence of a right to contribution under federal law preempts any right that might exist at state law.  See Mathis v. United Homes, LLC, 607 F. Supp. 2d 411, 428-29 (E.D.N.Y. 2009);

10

Koch v. Mirza, 869 F. Supp. 1031, 1041 (W.D.N.Y. 1994).  Wey's claims for contribution are therefore dismissed.

    II.   Indemnification

Wey seeks indemnification from Hartung and BDO for the claims brought against him in the SAC.  Common-law indemnification is available when a party "has been held to be vicariously liable without proof of any negligence or actual supervision on its own part."  McCarthy v. Turner Const., Inc., 17 N.Y.3d 369, 377–78 (2011).  A party may not seek indemnification, however, for his own "reckless, wilful, or criminal misconduct."  Globus v. Law Research Serv., Inc., 418 F.2d 1276, 1288 (2d Cir. 1969).  Indemnification is therefore not available for parties who are alleged to have committed securities fraud.  See id.; In re Livent Sec. Litig., 193 F. Supp. 2d 750, 754 (S.D.N.Y. 2002); In re Leslie Fay Cos., Inc. Sec. Litig., 918 F. Supp, 749, 764 (S.D.N.Y. 1996).  Accordingly, Wey may either be found liable for his own conduct (in which case indemnification would be unavailable), or he will not (in which case there is nothing to indemnify).

## Conclusion

The third-party defendants' October 29, 2021 motions to dismiss are granted.  The FATPC is dismissed.

Dated:	New York, New York
	May 11, 2022

>	_____
>	DENISE COTE
>	United States District Judge