UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                  :
JOSEPH PUDDU, MARK GHITIS, VALERY   :
BURLAK, and ADAM BUTTER,          :
                                    :
                  Plaintiffs,   :
                                    :       15cv8061 (DLC)
              -v-               :
                                    :       OPINION AND ORDER
NYGG (ASIA) LTD. and BENJAMIN TINBIANG :
WEI a/k/a/ BENJAMIN WEY,          :
                                    :
                  Defendants.   :
                                    :
-------------------------------------- X

APPEARANCES:

For plaintiffs:
Jonathan Richard Horne
Phillip C. Kim
Michael Alex Cohen
The Rosen Law Firm
275 Madison Avenue
34th Floor
New York, NY 10016

For defendants:
Warren Angelo Raiti
Warren Raiti
1345 Avenue of the Americas
Ste 33rd Floor
New York, NY 10105

Adam Brad Sherman
Tom M. Fini
Catafago Fini LLP
One Grand Central Place
Ste 47th Floor
New York, NY 10165

DENISE COTE, District Judge:

The plaintiffs in this securities fraud action have moved for class certification, and to appoint the Rosen Law Firm as class counsel.  Defendant Benjamin Wey opposes the motion on the ground that the plaintiffs have not adequately demonstrated their reliance on his alleged misrepresentations and omissions. For the following reasons, the motion is granted.

## Background

This Court assumes familiarity with the prior Opinions issued in this case and summarizes only the facts necessary to decide this motion.  See Puddu v. NYGG (Asia) Ltd., No. 15CV08061, 2022 WL 1488429 (S.D.N.Y. May 11, 2022); Puddu v. 6D Global Techs., Inc., No. 15CV08061, 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) (Nathan, J.); Puddu v. 6D Global Techs., Inc., 239 F. Supp. 3d 694 (S.D.N.Y. 2017) (Sweet, J.), vacated in part, 742 F. App'x 553 (2d Cir. 2018).  As described in the Second Amended Complaint ("SAC"), Wey is an investment banker and stock promoter.  Wey owned and controlled a New York-based consulting firm, New York Global Group, Inc. ("NYGG"), as well as a China-based investment banking firm, NYGG (Asia), Ltd. ("NYGG (Asia)").  Wey helped NYGG (Asia)'s clients -- usually companies based in China -- obtain a listing on a U.S. stock exchange by arranging for them to be acquired by a U.S. shell company.  In the process, Wey and his affiliates would obtain

substantially all of the clients' stock, and would misrepresent the number of shareholders to a stock exchange in order to obtain a listing.  Wey would then organize trades to manipulate the stock price.  Finally, Wey would sell his holdings in the client company at an inflated price, after which its share price would plummet.

The SAC asserts that in 2010, Wey arranged to have CleanTech Innovations, Inc. ("CleanTech"), an NYGG (Asia) client, listed on the NASDAQ.  Shortly after it was listed, however, the NASDAQ delisted CleanTech, finding that it had not sufficiently disclosed its relationship with Wey.  CleanTech then appealed the delisting.  During the appeal, Wey submitted to the NASDAQ a letter falsely stating that he was unaffiliated with NYGG (Asia) and that neither he nor NYGG (Asia) was a beneficial owner of a significant portion of CleanTech stock. Although CleanTech was eventually relisted, its share price had dropped significantly.  To cover his losses, Wey arranged for 6D Global Technologies, Inc. ("6D"), another company listed on the NASDAQ, to acquire CleanTech.

The SAC continues to explain that, in order to avoid being delisted itself, 6D did not disclose its relationship with NYGG or Wey.  In 2015, the SEC brought an indictment and lawsuit against NYGG and Wey for securities fraud in connection with their investment in CleanTech.  The SEC revealed that Wey was

the beneficial owner of NYGG (Asia), which held shares of 6D.
Once NASDAQ discovered Wey's relationship with 6D, it halted the
trading of 6D stock, and shortly thereafter delisted it.  6D
then appealed the delisting, and the appeal was denied.  When
NASDAQ initially delisted 6D, it was trading at $2.90 per share.
Shortly after 6D's appeal was denied, trading of 6D stock
resumed over the counter, at which point the share price fell to
$0.21.

The plaintiffs filed this action on October 13, 2015, and
filed the SAC on April 4, 2016, bringing claims on behalf of
themselves and a putative class of 6D shareholders.  On March 6,
2017, the Honorable Robert W. Sweet granted the defendants'
motion to dismiss the SAC.  Puddu v. 6D Global Techs., Inc., 239
F. Supp. 3d 694 (S.D.N.Y. 2017).  That decision was appealed,
and was largely vacated.  742 F. App'x 553 (2d Cir. 2018).

On remand, the case was reassigned to the Honorable Allison
J. Nathan.  On May 15, 2019, the plaintiffs announced that they
had reached a settlement on behalf of themselves and the class
with all remaining defendants except Wey and NYGG (Asia), who
had not appeared before the settlement discussions began.  The
settlement was approved on May 12, 2021.  Puddu v. 6D Global
Techs., Inc., No. 15CV08061, 2021 WL 1910656 (S.D.N.Y. May 12,
201).

Wey first appeared during settlement discussions.  On May 31, 2020, Judge Nathan vacated the entry of default against Wey. Puddu v. 6D Global Techs., Inc., No. 15CV08061, 2020 WL 2833852 (S.D.N.Y. May 31, 2020).  Wey then moved to dismiss the SAC, and his motion was denied on March 30, 2021.  Puddu v. 6D Global Techs., Inc., No. 15CV08061, 2021 WL 1198566 (S.D.N.Y. May. 30, 2021).  The case was reassigned to this Court on April 10, 2022. Discovery is ongoing.

On February 3, 2022, the plaintiffs submitted a motion to certify the following class:

> All persons and entities, other than Defendants and their affiliates, who purchased the publicly traded common stock of 6D Global Technologies, Inc. f/k/a CleanTech Innovations, Inc. ("6D" or "CleanTech") from June 16, 2014 through September 10, 2015, both dates inclusive ("Class Period"), or in private placements taking place on September 29, 2014, and November 21, 2014.

The law firm representing the plaintiffs, the Rosen Law Firm, also requested to be appointed as class counsel.  Wey opposed the motion on May 11.  The motion became fully submitted on June 14.

## Discussion

I.  Class Certification

To qualify for class certification, the plaintiffs must prove that the proposed class action satisfies the four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy

of representation.  Fed. R. Civ. P. 23(a).  In addition, the
plaintiffs must also show that the proposed class action can
proceed under one of the categories of Rule 23(b).  In this
case, the plaintiffs seek certification of the class under Rule
23(b)(3).  To do so, they must show that common questions of law
or fact predominate, that a class action is the superior method
for bringing their claim, and that the proposed class is
sufficiently ascertainable.  Fed. R. Civ. P. 23(b)(3); Brecher
v. Republic of Argentina, 806 F.3d 22, 24 (2d Cir. 2015).

A party seeking to certify a class must "affirmatively
demonstrate . . . compliance" with the requirements of Rule 23.
Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).  The
district court must "make a definitive assessment of Rule 23
requirements, notwithstanding their overlap with merits issues,
must resolve material factual disputes relevant to each Rule 23
requirement, and must find that each requirement is established
by at least a preponderance of the evidence."  In re U.S.
Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir.
2013) (citation omitted).  Stated differently, this means that
the district judge must "receive enough evidence, by affidavits,
documents, or testimony, to be satisfied that each Rule 23
requirement has been met."  Teamsters Local 445 Freight Div.
Pension Fund v. Bombardier Inc., 546 F.3d 196, 204 (2d Cir.
2008) (citation omitted).

The plaintiffs have satisfied Rule 23(a)'s requirements, and the defendants do not argue otherwise.  The numerosity requirement is satisfied, as there were around 19.5 million shares of 6D held by the public at the end of the class period. Additionally, as discussed in more detail below, the plaintiffs' claims present a number of questions of law and fact common to all class members.  The plaintiffs' claims are also typical of those of the class, as the class's claims all derive from the same alleged omissions of material fact.  Finally, plaintiffs provide adequate representation for the class -- their interests are aligned with those of the class, and the Rosen Law Firm has significant experience litigating securities class actions.

The defendants oppose class certification primarily on the ground that the plaintiffs have not satisfied Rule 23(b)(3)'s requirements.  For a class to be certified pursuant to Rule 23(b)(3), the court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. Rule 23(b)(3).  In a securities fraud case, elements such as "materiality," "loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before a class is certified." Amgen Inc. v. Conn. Retirement Plans & Tr. Funds, 568 U.S. 455, 475 (2013).  Instead, "[w]hether common questions of law or fact

predominate in a securities fraud action often turns on the
element of reliance." <u>Erica P. John Fund, Inc. v. Halliburton
Co.</u>, 563 U.S. 804, 810 (2011) ("<u>Halliburton I</u>").  To obtain
class certification, reliance must generally be proven via a
method commonly applicable to the entire class.  <u>See id.</u> at 810–
11; <u>In re Initial Pub. Offerings Sec. Litig.</u>, 471 F.3d 24, 42
(2d Cir. 2006).

The plaintiffs argue that reliance can be presumed under
the doctrine articulated in <u>Affiliated Ute Citizens of Utah v.
United States</u>, 406 U.S. 128 (1972).  In that case, the Supreme
Court held that plaintiffs need not provide affirmative proof of
reliance in securities fraud cases "involving primarily a
failure to disclose" so long as the "facts withheld [were]
material in the sense that a reasonable investor might have
considered them important in the making of this decision."  <u>Id.</u>
at 153–54.  In other words, when a securities fraud claim is
premised on an omission rather than a false statement, reliance
on the omission can be presumed from its materiality.  <u>Id.</u>  And
because materiality can be assessed on a class-wide basis, a
plaintiff can show that common questions of reliance predominate
over individual ones by showing that the class's claims depend
upon an omission.

By contrast, when a securities fraud claim is primarily
based on misrepresentations rather than omissions, the

plaintiffs may not rely on the <u>Affiliated Ute</u> presumption.
<u>Waggoner v. Barclays PLC</u>, 875 F.3d 79, 95 (2d Cir. 2017).  In
distinguishing between such cases, however, "the labels
'misrepresentation' and 'omission' are of little help because in
many instances, an omission to state a material fact relates
back to an earlier statement, and if it is reasonable to think
that that prior statement still stands, then the omission may
also be termed a misrepresentation."  <u>Id.</u> (citation omitted).
Accordingly, plaintiffs are not entitled to rely on the
<u>Affiliated Ute</u> presumption when the purported "omissions" on
which their claim is based simply omit a correction to a prior
false statement.  <u>See</u> <u>id.</u> at 96.

Instead, a plaintiff bringing a securities claim based
primarily on misrepresentations rather than omissions may create
a "rebuttable presumption" of reliance through a "fraud-on-the-
market theory."  <u>Basic Inc. v. Levinson</u>, 485 U.S. 224, 242
(1988).  To rely on this presumption, a plaintiff must show that
"(1) the alleged misrepresentations were publicly known, (2)
they were material, (3) the stock traded in an efficient market,
and (4) the plaintiff traded the stock between when the
misrepresentations were made and when the truth was revealed."
<u>Halliburton Co. v. Erica P. John Fund, Inc.</u>, 573 U.S. 258, 277–
78 (2014) ("<u>Halliburton II</u>").

The plaintiffs here may rely on the <u>Affiliated Ute</u> presumption to show reliance because their claims are based on the defendants' failure to disclose Wey's relationship with 6D. These omissions are material.  As alleged in the SAC, Wey beneficially owned as much as 45% of 6D shares and exercised significant influence over the company's operations. Additionally, the NASDAQ delisted 6D the day it discovered Wey's relationship with the company.  It is clear, and the defendants do not dispute, that Wey's involvement in 6D was a fact that a "reasonable investor might have considered . . . important." <u>Affiliated Ute</u>, 406 U.S. at 154.  Accordingly, because the plaintiffs may rely on the <u>Affiliated Ute</u> presumption, they have shown that common issues of reliance predominate over individual ones.  <u>See</u> Fed. R. Civ. P. 23(b)(3).

Wey argues that the plaintiffs may not rely on the <u>Affiliated Ute</u> presumption, because their claims depend on misrepresentations rather than omissions.  In particular, Wey points to allegations in the SAC that, in 2011, Wey falsely informed the NASDAQ and the SEC that he was not a beneficial owner of certain CleanTech securities, and that he did not own NYGG (Asia).  Wey argues that the plaintiffs' purported omissions are simply failures to correct these affirmative misstatements, and that the <u>Affiliated Ute</u> presumption therefore does not apply.

Wey's misrepresentations do not render the Affiliated Ute
presumption inapplicable.  As many courts in this District have
recognized, the Affiliated Ute presumption can still apply when
a complaint alleges both misstatements and omissions.  See
Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent.
Holdings, Inc., 338 F.R.D. 205, 216 (S.D.N.Y. 2021) (collecting
cases).  Here, the plaintiffs' claims are based primarily on the
omissions alleged in the SAC, not on Wey's affirmative
misrepresentations.  The misrepresentations Wey identifies were
made in connection with CleanTech's delisting appeal in 2011 --
three years before CleanTech was acquired by 6D and the class
period began.  These misrepresentations therefore do not form
the "actionable events" underlying the plaintiffs' claims.  See
Waggoner, 875 F.3d at 95.  Instead, the plaintiffs point to
several statements in which the defendants were required to
disclose Wey's relationship with 6D and NYGG (Asia) but failed
to.  As the Second Circuit recognized, the plaintiffs' claims
are focused on this "fail[ure] to disclose" rather than an
affirmative misrepresentation.  Puddu v. 6D Global Tech., Inc.,
742 F. App'x 553, 555 (2d Cir. 2018).

Wey also argues that, even if the plaintiffs are entitled
to rely on Affiliated Ute, he has rebutted any presumption of
reliance by showing that the SEC's announcement of Wey's
relationship with CleanTech and NYGG (Asia) did not cause 6D's

share price to fall.  Wey points to the Supreme Court's decision
in Halliburton II, 573 U.S. at 279, which he contends allows him
to rebut any presumption of reliance by showing that his alleged
misrepresentations or omissions did not impact 6D's share price.
Wey has also submitted an expert report, which found that 6D's
share price did not move significantly in the day of trading
between the SEC's announcement and 6D's delisting.

     Wey's argument does not rebut Affiliated Ute's presumption
of reliance.  Evidence of price impact may be relevant to a
"fraud-on-the-market" theory, under which reliance is presumed
because an efficient market will quickly update a company's
share price when information (or misinformation) about the
company is publicized.  See Halliburton II, 573 U.S. at 283.
But the Affiliated Ute presumption does not depend on an
efficient market, because it does not infer reliance from a
change in a share's market price.  Affiliated Ute, 406 U.S. at
154-55.  Instead, reliance is presumed in cases involving
material omissions because reliance would otherwise "as a
practical matter [be] impossible to prove."  Waggoner, 875 F.3d
at 95 (citation omitted).

     To invoke the Affiliated Ute presumption, the plaintiffs
need only show that the omissions were material -- a question of
fact common to the entire class.  See Amgen Inc., 568 U.S. at
475.  Because the plaintiffs' securities fraud claims are based

on omissions of material fact, they have shown that common questions of fact and law regarding reliance predominate over individual ones.

II. Appointment of Class Counsel

Pursuant to Rule 23(g), Fed. R. Civ. P., a court that certifies a class must appoint class counsel. In appointing class counsel, a court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

The Rosen Law Firm, which represents the plaintiffs in this action, has requested to be appointed as class counsel. Counsel is experienced in handling this kind of litigation, having represented plaintiff classes in numerous prior securities fraud cases. Additionally, counsel has represented the plaintiffs from the start of this action, presenting and litigating their claims against the defendants. The Rosen Law Firm has therefore shown that it has satisfied the requirements of Rule 23(g), and will adequately represent the class.

## Conclusion

The plaintiffs' February 3, 2022 motion for class certification is granted.  The following class is certified:

> All persons and entities, other than Defendants and their affiliates, who purchased the publicly traded common stock of 6D Global Technologies, Inc. f/k/a CleanTech Innovations, Inc. ("6D" or "CleanTech") from June 16, 2014 through September 10, 2015, both dates inclusive ("Class Period"), or in private placements taking place on September 29, 2014, and November 21, 2014.

The Rosen Law Firm is appointed as class counsel.


Dated:    New York, New York
          June 27, 2022

                              _____
                                   DENISE COTE
                         United States District Judge