```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
JOSEPH PUDDU, MARK GHITIS, VALERY        :
BURLAK, and ADAM BUTTER,                 :
                                         :
                          Plaintiffs,    :
                                         :   15cv8061 (DLC)
              -v-                        :
                                         :   OPINION AND ORDER
NYGG (ASIA) LTD. and BENJAMIN TINBIANG   :
WEI a/k/a/ BENJAMIN WEY,                 :
                                         :
                          Defendants.    :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiffs:
Jonathan Richard Horne
Phillip C. Kim
Michael Alex Cohen
The Rosen Law Firm
275 Madison Avenue
34th Floor
New York, NY 10016

For defendants:
Warren Angelo Raiti
Warren Raiti
1345 Avenue of the Americas
Ste 33rd Floor
New York, NY 10105

Adam Brad Sherman
Tom M. Fini
Catafago Fini LLP
One Grand Central Place
Ste 47th Floor
New York, NY 10165

DENISE COTE, District Judge:

Benjamin Wey has moved for reconsideration of the Opinion of June 27, 2022 granting the plaintiffs' motion for class certification. For the following reasons, Wey's motion is denied.

## Background

This Court assumes familiarity with its June 27 Opinion and summarizes only the facts necessary to decide this motion. See Puddu v. NYGG (Asia) Ltd., 15CV08061, 2022 WL 2304248 (S.D.N.Y. June 27, 2022). As described in the Second Amended Complaint ("SAC"), Wey is an investor and stock promoter with a history of stock manipulation. Wey was a beneficial owner, through NYGG (Asia) Ltd. ("NYGG (Asia)"), of a significant portion of the shares of 6D Global Technologies, Inc. ("6D"). Wey, however, had not publicly disclosed his relationship to NYGG (Asia) or 6D.

The SAC explains that on September 10, 2015, the Department of Justice and SEC announced an indictment and complaint against Wey. The announcement revealed Wey's relationship with NYGG (Asia). In response, the NASDAQ delisted 6D by the end of the day. When the NASDAQ halted trading, 6D stock was priced at $2.90 per share. Several months later, 6D stock resumed trading over the counter. Within four days, its price had fallen to $0.21 per share.

The plaintiffs filed this action on October 13, 2015, bringing claims on behalf of themselves and a putative class of 6D shareholders. On May 12, 2021, the Honorable Alison J. Nathan approved a settlement between the plaintiffs and all defendants except NYGG (Asia) and Wey. Puddu v. 6D Global Techs., Inc., No. 15CV08061, 2021 WL 1910656 (S.D.N.Y. May 12, 2021). The case was reassigned to this Court on April 10, 2022.

On February 3, 2022, the plaintiffs moved to certify a class and appoint class counsel. The motion was granted on June 27. Puddu, 2022 WL 2304248, at *5. Wey filed a motion for reconsideration on July 11. That same day, Wey also filed a petition before the Second Circuit to appeal the decision.

## Discussion

The standard for granting a motion for reconsideration is "strict." Cho v. Blackberry Ltd., 991 F.3d 155, 170 (2d Cir. 2021) (citation omitted). A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Analytical Surv., Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "A party may . . . obtain relief only when the party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Cho, 991 F.3d at 170.

The decision to grant or deny the motion for reconsideration rests within "the sound discretion of the district court." Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

The June 27 Opinion found that the plaintiffs had satisfied the criteria for class certification under Fed. R. Civ. P. 23. See Puddu, 2022 WL 2304248, at *2-5. In particular, the plaintiffs had shown that common questions of law and fact regarding reliance predominated over individual ones. Id. at *3-5. The plaintiffs made this showing by invoking a presumption of reliance applicable in securities fraud cases "involving primarily a failure to disclose." Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 143 (1972). In such cases, reliance may be presumed so long as the omissions are material. Id. at 153-54. And, because materiality is a question common to the entire class, the plaintiffs could rely on the Affiliated Ute presumption to show that common questions regarding reliance would predominate over individual ones. See Puddu, 2022 WL 2304248, at *4-5; Amgen Inc. v. Conn. Retirement Plans & Tr. Funds, 568 U.S. 455, 470 (2013).

Wey argues that he should have been provided the opportunity to rebut the Affiliated Ute presumption by showing that the revelation of his beneficial ownership of 6D shares did not impact the share price. Wey points to the Supreme Court's

4

decisions in Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014) ("Halliburton II") and Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System, 141 S. Ct. 1951 (2012), which hold that a defendant may rebut a presumption of reliance in cases involving affirmative misrepresentations by showing that those misrepresentations did not impact the share price. Wey also submitted an expert report finding that 6D's share price was unaffected in the day of trading that occurred after the SEC and Department of Justice announcements.

Wey already raised this argument in opposition to the plaintiff's motion for class certification. Accordingly, it need not be reconsidered here. See Analtyical Surv., Inc., 684 F.3d at 52. As explained in the June 27 Opinion, the Affiliated Ute presumption may not generally be rebutted by evidence regarding price impact, because Affiliated Ute does not infer reliance from a change in the share's market price. Puddu, 2022 WL 2304248, at *4. Affiliated Ute instead focuses on the materiality of the omission. Affiliated Ute, 406 U.S. at 153-54. The Opinion therefore found, in line with other decisions in this District, that evidence of price impact alone does not rebut the Affiliated Ute presumption. Puddu, 2022 WL 2304248, at *4-5. See also Gruber v. Gilbertson, 16CV09727, 2019 WL 4439415, at *8 (S.D.N.Y. Sept. 17, 2019); City of Livonia

Employee's Ret. Sys. v. Wyeth, 284 F.R.D. 173, 184 (S.D.N.Y. 2012).

Wey nevertheless insists that the logic of Halliburton II and Goldman Sachs requires that he have an opportunity to rebut the Affiliated Ute presumption with evidence that his omissions had no price impact. Neither Halliburton II nor Goldman Sachs involved the Affiliated Ute presumption. Instead, in both cases, the plaintiffs attempted to invoke the presumption of reliance articulated in Basic Inc. v. Levinson, 485 U.S. 224 (1988). See Halliburton II, 573 U.S. at 263; Goldman Sachs, 141 S. Ct. at 1957. The Basic presumption allows a plaintiff to demonstrate reliance by "invoking a presumption that the price of stock traded in an efficient market reflects all public, material information -- including material misstatements." Halliburton II, 573 U.S. at 263 (citing Basic, 485 U.S. at 108). In Halliburton II, the Supreme Court held that defendants can rebut the Basic presumption at the class certification stage by showing that the misstatement did not affect the company's share price. Id. at 279. And in Goldman Sachs, the Supreme Court held that evidence regarding a corrective disclosure's price impact is relevant even when the original misstatement was "generic," and therefore would not have significantly moved the share price at the time it was made. Goldman Sachs, 141 S. Ct. 1951, 1960-61.

6

Wey notes that, just as share price in an efficient market incorporates the effects of a misrepresentation, so too does it incorporate the effects of an omission.  Wey also emphasizes that the allegations in the SAC do not involve "face-to-face transactions," but instead involve stock traded on a public exchange.  Accordingly, Wey argues that the absence of price impact shows that his alleged omissions did not matter to investors, and that investors therefore did not rely on the omissions when purchasing 6D shares.

As explained in the June 27 Opinion, however, the Affiliated Ute presumption does not assume an efficient market.  See Puddu, 2022 WL 2304248, at *4.  Accordingly, an investor may still rely on a material omission even if a corrective disclosure does not quickly update the share price.  Nor do the plaintiffs' arguments for class certification depend upon an efficient market.  Indeed, the plaintiffs strongly contested Wey's suggestion that the market for 6D shares was efficient.

Finally, the fact that 6D shares were traded on a national exchange rather than face-to-face does not mean that the presumption of reliance is rebutted by evidence that corrective disclosures resulted in no price impact during a single day of trading.  Ultimately, Wey's arguments are targeted at a strawman.  The plaintiffs did not attempt to demonstrate reliance through a price-maintenance theory dependent on an

7

efficient market. Instead, the plaintiffs have invoked the Affiliated Ute presumption that investors rely on material omissions. This presumption does not depend on an efficient market, and under these circumstances it is not rebutted solely by showing that a disclosure correcting the omissions did not immediately impact the share price. Accordingly, Wey has not shown that the June 27 Opinion should be reconsidered.

## Conclusion

Wey's July 11, 2022 motion for reconsideration is denied.

Dated:   New York, New York
         July 15, 2022

                                       _____
                                              DENISE COTE
                                       United States District Judge